2005 ME 35

**CITY OF BANGOR**

v.

**PENOBSCOT COUNTY.**

Supreme Judicial Court of Maine.

Argued: Jan. 12, 2005.
Decided: March 8, 2005.

John K. Hamer (orally), Assistant City Solicitor, Bangor, for plaintiff.

John W. McCarthy, Brent A. Singer (orally), Rudman & Winchell, L.L.C., Bangor, for defendant.

Patricia M. Dunn (orally), James D. Liddell, Jensen Baird Gardner & Henry, Portland, for amicus curiae, Cumberland County; Gene R. Libby, Verrill Dana, L.L.P., Kennebunk, for amicus curiae, York County; P. Andrew Hamilton, William B. Devoe, Erik M. Stumpfel (orally), Eaton Peabody, Bangor, for amicus curiae, Town of Lincoln.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, and LEVY, JJ.

LEVY, J.

[¶ 1] Penobscot County (Penobscot) appeals from a summary judgment entered in the Superior Court (Penobscot County,

*Mead, J.*) concluding that, pursuant to 30–A M.R.S.A. § 453 (1996), the county cannot fund its regional 911 dispatch center through county taxes, but rather must fund the center through fee-for-service agreements with participating municipalities pursuant to 30–A M.R.S.A. § 107 (Supp.2004). Penobscot argues that section 453 permits counties to fund regional communications centers [1] through county taxes. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] This case involves the interplay between sections 453 and 107.

[¶ 3] Section 453 provides for the establishment and management of communications centers by counties, and the authority of counties to enter into agreements with municipalities to provide specific communications services:

> Each county may establish a communications center, separate from any communications function of the sheriff's department and capable of serving the communication needs of the county and the municipalities which may wish to use the center.
>
> The county commissioners, after consulting with municipal officers, are responsible for setting policies for the communications center. They shall appoint a director or chief dispatcher who is responsible for carrying out their policies. The director or chief dispatcher, if qualified, may be the County Director of the Maine Emergency Management Agency.
>
> The county communications center shall provide communication services for the sheriff's department, county civil emergency services, county or municipal rescue or ambulance services, county or municipal fire departments or municipal police departments.
>
> The county commissioners, after consulting with the director or chief dispatcher, may enter into an agreement with a municipality under section 107 to provide specific communications for municipal law enforcement functions, including dispatching of municipal units, in return for payment for these services.

30–A M.R.S.A. § 453.

[¶ 4] Section 107 provides, in pertinent part, that in addition to services otherwise authorized or required by title 30–A, counties may "contract to provide any service that a municipality may perform," so long as the cost for such services is not borne by the county tax.[2] 30–A M.R.S.A. § 107.

[¶ 5] Pursuant to section 453, Penobscot initiated enhanced 911 service in 1999, whereby all telephone calls from participating municipalities were directed to a county-operated dispatch center. At first, Penobscot funded the dispatch center through fee-for-service agreements with participating municipalities (hereinafter "section 107 agreements"). Penobscot in-

---

1. The term communications center, as used in 30–A M.R.S.A. § 453 (1996), refers to a law enforcement communications center. 30–A M.R.S.A. § 451(3) (1996) (defining "communications" as "a system for sending and receiving information to aid in law enforcement or law enforcement functions").

2. The pertinent sections read:
   In addition to any service authorized by or required of counties in this Title, the county commissioners of each county may develop and contract to provide any service that a municipality may perform....
   ....
   5. **Fees.** The cost of developing and providing the service must be borne by those municipalities or other public or private entities using the service or by other means, but must not in any way be borne by the tax for which municipalities are assessed pursuant to section 706.
   30–A M.R.S.A. § 107 (Supp.2004).

vited the City of Bangor (Bangor) to join the center, but Bangor declined and retained its own dispatch center.

[¶ 6] In 2001, upon the request of its budget committee, Penobscot began funding its dispatch center through county taxes and continues to do so. Bangor filed a complaint seeking a declaratory judgment that Penobscot must fund its dispatch center through section 107 agreements and not through county taxes. The parties submitted a joint statement of material facts and each moved for summary judgment.

[¶ 7] The court entered a summary judgment in favor of Bangor finding that Penobscot cannot fund its dispatch center through county taxes. The court reasoned that, although services authorized under section 453 would not otherwise fall under section 107, the fourth paragraph of section 453 requires counties to fund specific communications services for municipal law enforcement functions through section 107 agreements. The court explained that such an approach "protect[s] those municipalities who choose not to take advantage of certain county services, as is their right." This appeal followed.

## II. DISCUSSION

■ [¶ 8] Penobscot and Bangor concede that no genuine issues of material fact exist. Thus, we review the court's entry of a summary judgment for errors of law. *Korhonen v. Allstate Ins. Co.*, 2003 ME 77, ¶ 8, 827 A.2d 833, 836.

■ [¶ 9] Statutory interpretation is a legal question subject to de novo review. *Town of Eagle Lake v. Comm'r, Dep't of Educ.*, 2003 ME 37, ¶ 7, 818 A.2d 1034, 1037. "Our main objective in statutory interpretation is to give effect to the Legislature's intent." *Id.* To determine the Legislature's intent, we look first to the

plain meaning of the statute, and second, if there is any ambiguity, to extrinsic sources, such as legislative history. *Thompson v. Shaw's Supermarkets, Inc.*, 2004 ME 63, ¶ 7, 847 A.2d 406, 409. "[W]e consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Town of Eagle Lake*, 2003 ME 37, ¶ 7, 818 A.2d at 1037 (quotation marks omitted). Nothing in a statute is "treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible." *Labbe v. Nissen Corp.*, 404 A.2d 564, 567 (Me.1979).

[¶ 10] The first paragraph of section 453 authorizes counties to establish communications centers capable of serving the needs of the counties and the municipalities that wish to use them. 30–A M.R.S.A. § 453. The court concluded, and Bangor argues, that the plain language of the fourth paragraph of section 453 protects a municipality's right not to participate by requiring counties to fund "specific communications for municipal law enforcement functions" through section 107 agreements. The court also concluded that the fourth paragraph's use of the word "may" does not refer to a county's power to choose the method of delivery and funding of such services, but rather refers to the county's power to choose whether to provide them. Once a county chooses to provide "specific communications for municipal law enforcement functions," the court concluded it must fund them through section 107 agreements.

■ [¶ 11] Because statutes authorizing or requiring county functions or services typically do not indicate a source of funding, the county tax is the default source of funding for such provisions. *See, e.g.*, 30–A M.R.S.A. § 2(2) (1996) (allowing for county officers' expenses); 30–A M.R.S.A.

§ 51 (1996 & Supp.2004) (providing for county commissioners' salaries); 30–A M.R.S.A. § 121(1) (1996) (requiring counties to keep and maintain certain buildings); *id.* § 281 (requiring counties to support the district attorneys' operations); *id.* § 456 (authorizing counties to provide rescue services); *id.* § 1001 (requiring county commissioners, at the expense of the county, to "erect and maintain a true meridian line"). The issue before us is whether the fourth paragraph of section 453 removes the funding of "specific communications for municipal law enforcement functions" from the ambit of the default rule because of its reference to section 107. We conclude that it does not, based primarily on the interplay of the separate paragraphs in section 453, as well as our consideration of section 453 in relation to other statutes in the same scheme.

 [¶ 12] As an initial matter and contrary to the court's conclusion, we conclude that the fourth paragraph of section 453 is ambiguous. On one hand, it can reasonably be interpreted as an authorizing mechanism that allows counties to provide "specific communications for municipal law enforcement functions" on the condition that counties fund such services through section 107 agreements. On the other, it can reasonably be interpreted as a funding mechanism, providing an alternative means of funding for services already authorized.

■ [¶ 13] Reading the fourth paragraph of section 453 in context with the third paragraph suggests that the fourth paragraph is more properly read as a funding, as opposed to an authorizing, mechanism. The third paragraph prescribes, "The county communications cen-

ter shall provide communication services for the sheriff's department, county civil emergency services, county or municipal rescue or ambulance services, county or municipal fire departments or municipal police departments." 30–A M.R.S.A. § 453. The definition of "communications" includes dispatching. 30–A M.R.S.A. § 451(3) (1996). Accordingly, a county is authorized to provide communications services, including dispatching, to municipalities who wish to participate if it establishes a communications center. Hence, it is redundant to construe the fourth paragraph as authorizing the provision of "specific communications for municipal law enforcement functions, including dispatching of municipal units," because such services are already authorized by the third paragraph.

[¶ 14] Bangor argues that a municipality's right not to participate in a regional communications center is compromised if it must nonetheless subsidize the center's operations through the county tax. The language and legislative history of other provisions in the statutory scheme—County Law Enforcement Functions, 30–A M.R.S.A. §§ 451–460 (1996)—undermine this rationale. They reveal that the Legislature anticipated and, through its adoption of the statutory scheme, implicitly endorsed the very result that Bangor seeks to avoid: namely, that municipalities may have to subsidize the provision of certain services to other municipalities through the county tax even if they do not receive the benefits of such services. Title 30–A M.R.S.A. § 457(1)(A) (1996), for instance, specifies, "Each county may provide ambulance service ... [t]o the entire county, omitting only those municipalities who request not to be included[.]" [3] Similarly,

---

3. A proponent of section 457 explained this provision as follows: "it ... specifies that if [a county is] going to provide ambulance [service] to the county with tax funds, then it has

to be done to all the county, except those municipalities who request not to be included in the service." 1 Legis. Rec. 1242 (1977). By acknowledging that the county tax will be

30–A M.R.S.A. § 452 (1996) provides that, to the extent a county sheriff undertakes to patrol the county, the sheriff "shall patrol those areas in the county that have no local law enforcement but may not be required ... to patrol the entire county." [4]

[¶ 15] Bangor contends that section 453 is distinguishable because it involves the provision of municipal, as opposed to county, services. If the Legislature intended the fourth paragraph of section 453 to require counties to fund "specific communications for municipal law enforcement functions" through section 107 agreements, however, it could easily have done so more clearly. For instance, like section 453, section 457 authorizes the provision of services to individual municipalities. 30–A M.R.S.A. § 457(1)(B) (1996). But section 457(1)(B) mandates that if counties provide ambulance services by municipal-county contracts under section 107, county tax revenues cannot be used to support them. *Id.* The fact that the Legislature did not include a similar provision in the fourth paragraph of section 453 suggests that it

did not intend to prohibit the use of county taxes as a funding source.

[¶ 16] We conclude that the fourth paragraph of section 453 provides an alternative means of funding "specific communications for municipal law enforcement functions." We interpret "specific" to mean services over and above what a county chooses to provide pursuant to section 453. For example, fifteen of Cumberland County's twenty-seven communities have their 911 calls directed to the county's regional communications center. For ten of those communities, the center transfers calls to the communities' respective emergency dispatch services. For the other five communities, the center both receives calls and dispatches the communities' units. The five communities pay for this additional service through section 107 agreements. Thus, rather than having to provide the same level of communications services to all of its municipalities, a county can decide to provide a baseline service funded through the county tax and then offer additional services to municipalities on a fee-for-service basis. [5]

used to fund the provision of ambulance services even though some municipalities may not use them, this quotation suggests that the Legislature did not view permitting the use of county taxes to fund a service and preserving a municipality's right not to participate in said service as dichotomous.

4. During debate over the statute, an opposing legislator who was concerned that a previous draft would be interpreted as requiring county sheriff's departments to expand their staffs complained, "[county sheriff's departments] will be hiring more people and those of us who come from a county that has more than half of their town[s] with organized police departments ... are helping to supplement the other towns who choose not to have to pay a police department ...." 2 Legis. Rec. H–872 (1991). The clause "to the extent the sheriff undertakes to patrol" was later added, which addressed the concern that sheriff's departments would be forced to expand their staffs. *See* House Amend. D to Comm.

Amend. A to L.D. 1167, No. H–599 (115th Legis. 1991). The revision did not, however, change the principle that if a county sheriff offers patrol services, the sheriff must patrol those towns that do not have local law enforcement. Consequently, municipalities with local police departments subsidize the provision of patrol services to those towns that choose not to have local police departments.

5. Additional support for our interpretation of "specific" can be found in the December 1976 Report of the Joint Select Committee on County Government. In its Report, the Committee rejected the concept of financing county law enforcement services through fee-for-service agreements as opposed to the county tax. Report of the Joint Select Committee on County Government: Study on County Government 32 (Dec. 1976). The Committee noted, though, that the fee-for-service principle was being applied to the financing of *addi-*

[¶ 17] This interpretation promotes fairness and flexibility, as counties can use the political process to gauge what the baseline level of service should be, and then municipalities can use section 107 agreements to purchase additional services above that level. This interpretation also accounts for the fact that it would be difficult for counties to establish and maintain communications centers if the sole source of funding was section 107 agreements, because of the possibility that municipalities could opt out in any given year.

The entry is:

Judgment vacated. Case remanded to the Superior Court for further proceedings consistent with this opinion.

*tional* patrol services to municipalities in

some counties. *Id.* at 32–33.