2005 ME 108

**FIRST UNION NATIONAL BANK**

v.

**Richard R. CURTIS III et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: June 2, 2005.
Decided: Sept. 21, 2005.

Andrew W. Sparks, Benjamin P. Camp Jr., Drummond & Drummond, L.L.P., Portland, Philip R. Foster, Ellsworth, for plaintiff.

Edmond J. Bearor, Timothy A. Pease, Rudman & Winchell, Bangor, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] First Union National Bank appeals from a judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*). It contends that the court erred when it held that the Improvident Transfers of Title Act, 33 M.R.S.A. §§ 1021–1025 (1999 & Supp 2004), impaired its mortgage in real estate. Because we agree, we vacate the judgment.

I. BACKGROUND

[¶ 2] In June 1998, Melissa Curtis was conveyed real property at 33 Fruit Street

in Bangor subject to a life estate in her grandmother, Eleanor Reilly, who had lived there since 1978.[1] Melissa and her husband, Richard, sought to mortgage the Fruit Street property as security for a loan from Crossland Mortgage Company. Due to Reilly's life estate Crossland notified the Curtises that it could not approve the loan. Crossland had no dealings with Reilly. Melissa, however, enticed Reilly to release her life interest so they could mortgage the property. The day after the Curtises executed a mortgage deed in favor of Crossland, the Curtises created a new life estate in favor of Reilly that was now inferior to Crossland's first mortgage.

[¶ 3] Crossland assigned the Curtises' mortgage to BNC in February 2000. In June 2000, the Curtises defaulted. In late July, Option One, a company servicing BNC's loans, initiated foreclosure proceedings. The Curtises filed for bankruptcy protection, stalling the foreclosure. In August 2001, Option One, acting under a power of attorney from BNC, formalized an assignment of the Curtises' mortgage to First Union. Because Option One also serviced this loan for First Union, the trial court found that First Union had either actual or constructive knowledge that the loan was in default before it acquired it.

[¶ 4] The day after the formal assignment, First Union initiated this foreclosure action against the Curtises, naming Reilly as a party in interest. Because the Curtises did not defend the action, the trial court (*Mead, J.*) entered a default judgment against them. The default, however, reserved to Reilly her right to pursue her counterclaim that the original release of her life estate was void pursuant to the Improvident Transfers of Title Act, 33 M.R.S.A. §§ 1021–1025. The court found, and none of the parties dispute, that the release of the life estate violated the Act.[2] The court also found that "Reilly's claim for relief under the [Improvident Transfers of Title Act] [did] not implicate Crossland as a source for relief."[3]

[¶ 5] First Union argued that, pursuant to section 1023(2), it was a good faith purchaser obtaining an interest in the property for value. The court found that

---

1.  That same day, Melissa conveyed the property by warranty deed to her husband and herself as joint tenants.

2.  At the heart of the Improvident Transfers of Title Act is a presumption of undue influence. The Act provides:

    In any transfer of real estate or major transfer of personal property or money for less than full consideration or execution of a guaranty by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it is presumed that the transfer or execution was the result of undue influence, unless the elderly dependent person was represented in the transfer or execution by independent counsel. When the elderly dependent person successfully raises the presumption of undue influence by a preponderance of the evidence and when the transferee or person who benefits from the execution of a guaranty fails to rebut the presumption, the

elderly dependent person is entitled to avoid the transfer or execution and entitled to the relief set forth in section 1024.

33 M.R.S.A. § 1022(1) (Supp 2004). The Act defines an elderly person as any person over sixty years old. 33 M.R.S.A. § 1021(2) (1999). Reilly was older than sixty, she was dependent, she received less than full consideration for subordinating her rights to those of Crossland, the transaction was made in the context of a confidential relationship, Reilly was not represented by counsel, and there was no evidence at trial rebutting the presumption of undue influence. *See* 33 M.R.S.A. § 1022.

3.  Reilly's answer and counterclaim included claims against Crossland alleging various torts. The court found that Reilly failed to establish these claims because she had not established that Crossland did anything wrong.

First Union's argument tended to equate the notion of good faith with the concept of a holder in due course.[4] Because a party can achieve a status of holder in due course only if it takes an instrument "[w]ithout notice that the instrument is overdue[,]" 11 M.R.S.A. § 3–1302(1)(b)(iii) (1995), and because First Union knew the loan was in default, the court found that First Union was not a holder in due course.

[¶ 6] The court also found that First Union likely acquired this mortgage from BNC as part of a pool of accounts. Because there are good and bad accounts in such a pool, and because there was "no evidence of the value of the account when First Union purchased it, the amount of consideration paid by First Union for it, or the nature of any influence it may have had in the consideration paid by First Union for a collection of mortgages[,]" there was no evidence that would "support a finding that First Union in fact paid 'value' for the Curtis account specifically." Accordingly, the court avoided the initial conveyance of the life estate to Melissa and reinstated Reilly's life estate as an interest superior to First Union's mortgage. This appeal followed.

## II. DISCUSSION

[¶ 7] First Union contends that mortgagees are expressly exempt from the Improvident Transfers of Title Act. Reilly contends that the plain language of the statute states that *all* parties exempted from the Act are required to prove that they obtained their interest for value after the transfer from the elderly dependent person, and that there was no error in the court's factual finding that First Union failed to meet its burden of establishing that it paid value for the mortgage.

[¶ 8] Statutory construction is a question of law entitled to de novo review. *City of Bangor v. Penobscot County,* 2005 ME 35, ¶ 9, 868 A.2d 177, 180. "Our main objective in statutory interpretation is to give effect to the Legislature's intent." *Id.* (quotation marks omitted). In ascertaining the Legislature's intent we first determine the statute's plain meaning. *Thompson v. Shaw's Supermarkets, Inc.,* 2004 ME 63, ¶ 7, 847 A.2d 406, 409. If there is any ambiguity, we then look to extrinsic sources such as the statute's history and underlying policy. *Id.* "We consider the whole statutory scheme for which the section at issue forms a part so that a harmonious result, presumably the intent of the Legislature, may be achieved." *City of Bangor,* 2005 ME 35, ¶ 9, 868 A.2d at 180 (quotation marks omitted).

[¶ 9] The pertinent portion of the Act provides:

> No relief obtained or granted under this section may in any way affect or limit the right, title and interest of good faith purchasers, mortgagees, holders of security interests or other 3rd parties who obtain an interest in the transferred property for value after its transfer from the elderly dependent person. No relief obtained or granted under this section may affect any mortgage deed to the extent of value given by the mortgagee.

33 M.R.S.A. § 1023(2) (Supp.2004). Accordingly, an improvident transfer cannot affect a mortgagee's interest in a mortgage deed.

[¶ 10] First Union is the assignee of the mortgagee that received the mortgage note and deed at issue by assignment. A valid assignment "gives to the

---

**4.** First Union also raised the argument that it was, pursuant to the terms of the Improvident Transfers of Title Act, excluded from its provisions.

assignee of the contract all the rights and remedies enjoyed by the assignor." *Lazarovich v. Tatilbum,* 103 Me. 285, 290, 69 A. 275, 277 (1907) (quotation marks omitted). Accordingly, First Union's claim that it holds a valid mortgage on the property is dependant on whether Crossland held a valid mortgage on the property. The record indicates that the original mortgage was for value: Crossland provided the Curtises with a loan. Because "[n]o relief obtained or granted under [the Act] may in any way affect or limit the right, title and interest of ... mortgagees," 33 M.R.S.A. § 1023(2), Crossland's mortgage was exempt from the Act. Had Crossland held on to the mortgage, the preceding improvident transfer could not have voided its security interest.[5] Because Crossland held a valid and enforceable mortgage, First Union, as its assignee for value, holds a valid and enforceable mortgage.[6]

[¶ 11] Reilly contends that, for First Union to rely on the limitation in section 1023(2), it is limited to the amount First Union paid for the assignment, and it must establish that amount, which it has not done. Reilly misinterprets the statute. The act limits the recovery to the "value given by the mortgagee." 33 M.R.S.A. § 1023(2). The "value given by the mortgagee" refers to the amount given in exchange for the note and mortgage deed. The act plainly limits the amount that can be recovered from the mortgagor to the amount "given by the mortgagee," here Crossland.

[¶ 12] Additionally, Reilly's interpretation of the statute would also frustrate the very purpose of the exclusion, which is to protect security interests. If, for example, First Union had shown, to the satisfaction of the trial court, what it paid for the assignment, Reilly's interpretation of the statute would mean that First Union's security interest would only protect it up to that amount. If that were so, First Union would never purchase the note and mortgage if the most it could recover is the amount it paid Crossland, because with the delays and costs associated with foreclosure, it would always come out behind.

[¶ 13] Because the Act only requires First Union to show that it paid value for the assignment and not the amount, and because there is no dispute that First Union paid something for a group of mortgages, of which at least one was in default, First Union steps into the shoes of Crossland. *See Hills v. Eliot,* 12 Mass. 26, 30–31 (1815) ("[W]hen a mortgagee makes a deed of assignment upon the back of the mortgage deed, or by a separate instrument referring to it, the assignee is put in the place of the mortgagee, to all intents and purposes ....").[7]

The entry is:

---

**5.** Crossland was not a party to the improvident transfer. The court found that Crossland did nothing wrong and those findings are not challenged on appeal.

**6.** First Union purchased an overdue note. The general rule is that a purchaser of an overdue note and mortgage, with notice that the note was overdue, cannot be a holder in due course and is subject to defenses. *See* 11 M.R.S.A. §§ 3–1302(1)(b)(iii), 3–1305 (1995). Because there are no defenses available against the original mortgagee, Crossland, there are none available against the assignee, First Union.

**7.** First Union's reliance on a holder in due course analysis is misplaced because the record indicates that there were no defenses, real or personal, to the mortgage, as between the mortgagor and original mortgagee. *See generally* 11 M.R.S.A. §§ 3–1302(1), 3–1305(1). Even if a holder in due course analysis is appropriate, the "shelter rule" would protect First Union's interest. *See* 11 M.R.S.A. § 3–1203(2) *(1995)* ("Transfer of an *instrument,* whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument....").

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.