2007 ME 79

**STATE of Maine**

v.

**Martin MAYNARD.**

Supreme Judicial Court of Maine.

Submitted On Briefs: March 29, 2007.
Decided: July 5, 2007.

Neal T. Adams, District Attorney, Todd R. Collins, Asst. Dist. Atty., Caribou, for State.

Alan F. Harding, Esq., Hardings Law Offices, Presque Isle, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] Martin Maynard appeals from judgments of conviction for obstructing criminal prosecution (Class C), 17–A M.R.S. § 754(1)(A)(1) (2006); tampering with a witness, informant, juror or victim (Class B), 17–A M.R.S. § 454(1–B)(B)(1)

(2006); and criminal mischief (Class D), 17-A M.R.S. § 806(1)(A) (2006); entered in the Superior Court (Aroostook County, *Hunter, J.*) following a jury trial.[1] Maynard contends that (1) the court erred in its instruction to the jury, leading the jury to improperly consider as substantive evidence a written statement that should have been limited to impeachment; and (2) the evidence does not support, and the statute does not allow, his conviction for obstructing criminal prosecution. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The evidence at Maynard's trial, viewed in the light most favorable to the State, *see State v. Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027, revealed the following. At approximately 5:30 A.M. on June 7, 2004, Maynard arrived at the Limestone residence of his girlfriend,[2] who had driven to Maynard's home and removed a license plate from his vehicle the previous evening. The girlfriend's oldest daughter, a teenager, testified that she heard a loud bang and looked out a window of the house, where she could see the top part of Maynard's body kicking down the door. The girlfriend and Maynard proceeded to argue. During the course of the argument, items in the house were damaged.

[¶ 3] The girlfriend's younger, eleven-year-old daughter called a neighbor at 7:00 A.M. to ask if she could come by before school to pick up something that she had left there. When the daughter arrived at the neighbor's house, she was crying and said that her mother and Maynard were fighting. The neighbor attempted to telephone the girlfriend at her house several times that morning, but there was no answer and the calls went into voicemail. The oldest daughter also attempted to call her mother from school several times, but was unable to reach her.

[¶ 4] Later that morning, the girlfriend arrived at the neighbor's residence, walking barefoot on the rocky driveway. She was upset and crying. The neighbor and her brother testified, without objection, that the girlfriend told them that she and Maynard had an argument; he had held her prisoner in the house and would not let her leave; the phone lines had been cut; items in the house had been broken; and Maynard had told her that if she went to the police, he would harm her and damage her car.

[¶ 5] The girlfriend called the police from the neighbor's residence at approximately 11:00 A.M. The responding officer testified, without objection, that the girlfriend was scared and shaking when he spoke to her, and that she told him that at "approximately 5:30 this morning, her ex-boyfriend had come to the residence and had kicked in the door and cut her phone lines and threatened [that] if she called the police that he'd put her in the hospital." The officer went with the girlfriend to her residence and observed that the wooden doorframe was splintered, and the phone lines had been cut.

---

**1.** In addition to charges of obstructing criminal prosecution, tampering with a victim, and criminal mischief, Maynard was charged with burglary (Class B), 17-A M.R.S. § 401(1)(B)(3) (2006); and aggravated criminal trespass (Class C), 17-A M.R.S. § 402–A(1)(A) (2006). The jury was unable to agree on the burglary and aggravated criminal tres-pass charges, and they are not before us in this appeal.

**2.** Maynard and the girlfriend had recently ended their relationship at the time of the incident. They were reconciled by the time of his trial; therefore, this opinion refers to her as Maynard's girlfriend.

[¶ 6] That afternoon, the girlfriend filed a complaint for protection from abuse against Maynard in the Caribou District Court. *See* 19–A M.R.S. §§ 4001–4014 (2006). The clerk of court signed and stamped the form, which reads, "Personally appeared the above named Plaintiff and signed and made oath to the truth of the statements in the above complaint before me." *See* 19–A M.R.S. § 4005(3). Attached to the form is the handwritten statement of the girlfriend, which reads in its entirety:

> 5:45 AM—6/7/04—Defendant kicked in my door—cut my phone wire this am—Destroyed Personal Belongings—threaten[ed] me—if I call the cops—I will end up in a hospital—also—the Defendant stated that he would destroy my car, Limestone PD took pictures of my home—phone wires—
>
> Also the Defendant kept me a prisoner in my home this am for 4 hrs—the Defendant kept[ ] cornering [ ] me—scaring me = I couldn't get out or call anyone—

A temporary protective order was issued that day, pursuant to 19–A M.R.S. § 4006(2). After a hearing on June 23, 2004, a permanent protection from abuse order was issued. On July 14, 2004, however, the protection order was vacated by the District Court on the girlfriend's motion to vacate.

[¶ 7] At Maynard's trial, the girlfriend told a different story from what she had told the neighbors and the responding officer, and from what she had written in her sworn statement attached to her complaint for protection from abuse. She testified that she did not see Maynard cut the phone lines; that he did not break down the door, but rather that it had been done previously by her thirteen-year-old son; and that she had lied as a way to get back at Maynard for breaking off their relationship, knowing that it would hurt him in his custody battle with his former wife.

[¶ 8] Without objection from Maynard, the State offered in evidence the girlfriend's sworn statement filed with the complaint for protection from abuse. Without objection from the State, Maynard offered in evidence the content of the girlfriend's motion to vacate the protection order.[3] Neither party requested an instruction to limit the use of any evidence, and none was given.

[¶ 9] There was no objection to the following part of the court's jury instruction:

> If you should find that a witness on another occasion has made a prior statement under oath such as in a sworn statement, [ ] and you find that the statement is inconsistent with testimony given to you in court, you may either accept or reject the prior statement under oath or the testimony given the court as being the correct version of events. And you may also consider the prior statement in deciding what weight to give to the in-court testimony, whether or not you want to believe the witness.
>
> And you should bear in mind that the *prior sworn statement may also be used not only to measure or evaluate witness credibility, but also may be used to prove facts which are in issue or in dispute.*

(Emphasis added.)

[¶ 10] The jury returned a guilty verdict on three of the five charges: obstructing

---

3. The handwritten reasons the girlfriend submitted for filing the motion to vacate the protection order, read as follows: "I only wanted to hurt the defendant. I knew he had one on him already—also—the night Before—I wrote my Report I was drunk—Hung over—I never wanted things to turn out this way."

criminal prosecution, tampering with a victim, and criminal mischief. The jury was unable to agree on the other charges. Maynard appeals his convictions.

## II. DISCUSSION

### A. Substantive Admissibility of Prior Sworn Statements

■ [¶ 11] Contending that the statements in the affidavit attached to the girlfriend's complaint for an order for protection from abuse are hearsay, and admissible for impeachment purposes only, Maynard argues that the court erred when it told the jury that, if it were to "find that a witness on another occasion has made a prior statement under oath such as in a sworn statement," then that statement could be considered by them as substantive evidence. Because Maynard did not object to the jury instruction, we review the instruction "only for obvious error affecting his substantial rights." *State v. Benner*, 654 A.2d 435, 437 (Me.1995); M.R.Crim. P. 52. We find no obvious error.

[¶ 12] Prior inconsistent statements are admissible for impeachment purposes. *See* M.R. Evid. 607. They are admissible for *substantive* purposes as non-hearsay, however, if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . inconsistent with the witness's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition." M.R. Evid. 801(d)(1)(A).

[¶ 13] Pursuant to the Maine Criminal Code, a person who gives a statement under oath in any official proceeding is subject to the charge of perjury if that person makes "a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and . . . does not believe the statement to be true." 17–A M.R.S. § 451(1)(A) (2006). " 'Official proceeding' means any proceeding before a legislative, judicial, administrative or other governmental body or official authorized by law to take evidence under oath or affirmation including a notary or other person taking evidence in connection with any such proceeding." 17–A M.R.S. § 451(5)(A) (2006).

[¶ 14] Maynard argues that the oath given with the statement for the complaint for protection from abuse was not given in the context of an "official proceeding," and that the statement did not subject the girlfriend to the penalty of perjury at a trial. At most, he contends, it subjected the girlfriend to the crime of "false swearing,"[4] and, therefore, the statement should not have been considered as non-hearsay pursuant to M.R. Evid. 801(d)(1). Without definitively deciding whether the girlfriend's statement given in conjunction with the complaint for protection from abuse could subject the girlfriend to a charge of perjury within the meaning of the Maine Criminal Code, the court's unobjected to instruction in this case did not amount to obvious error.

---

4. A person is guilty of the lesser, Class D offense of "false swearing" if:

A. He makes a false statement under oath or affirmation or swears or affirms the truth of such a statement previously made and he does not believe the statement to be true, provided

(1) the falsification occurs in an official proceeding as defined in section 451, sub-section 5, paragraph A, or is made with the intention to mislead a public servant performing his official duties; or

(2) the statement is one which is required by law to be sworn or affirmed before a notary or other person authorized to administer oaths.

17–A M.R.S. § 452(1)(A)(1), (2) (2006).

[¶ 15] The statutory section governing protection from abuse, entitled "Commencement of proceeding," states: "An adult who has been abused by a family or household member may seek relief by filing a complaint alleging that abuse." 19–A M.R.S. § 4005(1) (2006). Further, "[p]rior to the plaintiff signing a complaint, the court shall notify the plaintiff, orally or in writing, that it is a crime to make a false statement under oath in a court document." 19–A M.R.S. § 4005(5) (2006).

[¶ 16] Had Maynard objected to the court's instruction to the jury that "prior sworn statements" can be used as substantive evidence, the court would have been alerted to the argument that Maynard makes for the first time to us, namely, that a sworn statement made in connection with a complaint for protection from abuse may subject the person making the statement to the crime of false swearing, but not to "perjury." Reviewing the instruction for obvious error, however, a protection from abuse order is an "official proceeding" brought before the court, and the sworn statement attached to the complaint did subject the girlfriend to a criminal penalty.[5] Moreover, the girlfriend testified at Maynard's trial, and was subject to cross-examination concerning the statement. Whether or not in this case Maynard's girlfriend would have been subject to a prosecution for perjury pursuant to 17–A M.R.S. § 451(1)(A), it was not obvious error affecting Maynard's substantial rights for the court to instruct the jury, without objection, that if they were to find that a witness had made a prior sworn statement under oath, the statement could be considered as substantive evidence.

**B. Definition of Obstructing Criminal Prosecution**

[¶ 17] Maynard further contends that the evidence presented at trial was insufficient to convict him of obstructing criminal prosecution. Although Maynard frames his argument as one of sufficiency of the evidence, his challenge is really directed at the statutory definition of "obstructing criminal prosecution." "Statutory interpretation is a legal question subject to de novo review." *City of Bangor v. Penobscot County*, 2005 ME 35, ¶ 9, 868 A.2d 177, 180.

[¶ 18] Pursuant to 17–A M.R.S. § 754(1)(A)(1),

1. A person is guilty of obstructing criminal prosecution if:

A. The person uses force, violence or intimidation, or the person promises, offers or gives any pecuniary benefit to another, with the intent to induce the other:

(1) To refrain from initiating a criminal prosecution or juvenile proceeding.

The term "person" under the Maine Criminal Code "means a human being or an organization." 17–A M.R.S. § 2(20) (2006).

[¶ 19] Maynard contends that a private citizen, as a matter of law, cannot initiate a criminal proceeding. Therefore, he argues that even if he did seek to prevent his girlfriend from contacting the police, he cannot be found guilty of obstructing her from initiating a criminal prosecution. To support this contention, Maynard argues in his brief that, "[p]ursuant to the Maine Criminal Code, a criminal prosecution is initiated when either (1) a criminal complaint is filed or (2) an indictment is re-

---

**5.** In the instant case, the only *sworn* statement admitted into evidence was the written statement made by Maynard's girlfriend when she filed a complaint seeking an order of protection from abuse.

turned." The definition on which Maynard relies, however, is directed at how to determine the period of the statute of limitations for commencing prosecution, and is limited to "the purposes of this section." 17–A M.R.S. § 8(6) (2006).

[¶ 20] Moreover, section 8(6) provides that, "a prosecution is *commenced*" upon the filing of a criminal complaint or the return of an indictment, 17–A M.R.S. § 8(6)(B)(1), (2) (emphasis added), and does not use the word "initiated," the operative word in section 754(1)(A)(1). The use of the word "initiat[e]" in section 754(1)(A)(1), as opposed to "commence," which implies the formal filing of a criminal complaint in a court of law, also supports the conclusion that the statute applies to defendants who attempt to prevent a private citizen from taking the first steps to notify public officials of criminal conduct.

[¶ 21] In addition, when comparing the statutory language with other provisions in the Maine Criminal Code, it is clear that the offense of "obstructing criminal prosecution" applies not only to those defendants who seek to prevent a *public servant* from taking the legal steps to bring a prosecution against a defendant in a court of law, but also to those defendants who seek to prevent a private individual from seeking the assistance of prosecutors or law enforcement officers to initiate criminal charges. When the Legislature has wanted to limit the application of a criminal statute to interference with a public servant, it has used appropriate limiting language. *See* 17–A M.R.S. § 751 (2006) ("A person is guilty of obstructing government administration if the person intentionally interferes by force, violence or intimidation or by any physical act *with a public servant* performing or purporting to perform an official function.") (emphasis added).

[¶ 22] The evidence presented at trial was sufficient for the jury to find that Maynard used force, violence, or intimidation against his girlfriend by telling her that he would either harm her or damage her property if she were to go to the police, with the intent to induce her to refrain from contacting the police and initiating criminal proceedings against him. Accordingly, the evidence was sufficient for Maynard to be found guilty of obstructing criminal prosecution.

The entry is:

Judgment affirmed.