STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
BUSINESS AND CONSUMER COURT
LOCATION: PORTLAND
DOCKET NO. BCD-RE-17-04
(consolidated with BCD-RE-17-03 &
BCD-CV-17-28)

KEITH W. MITCHELL,
d/b/a/ KEITH W. MITCHELL &
SONS TRUCKING,

      Plaintiff,

v.

CENTRAL NATIONAL
GOTTESMAN, INC.
AND
S.D. WARREN COMPANY, d/b/a
SAPPI NORTH AMERICA,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COMBINED ORDER ON
PLAINTIFF KEITH W.
MITCHELL'S MOTION FOR
PARTIAL SUMMARY JUDGMENT
AND DEFENDANTS CENTRAL
NATIONAL GOTTESMAN'S &
S.D. WARREN COMPANY'S
MOTION FOR SUMMARY
JUDGMENT**

Defendants Central National Gottesman, Inc. ("CNG") and S.D. Warren Company d/b/a Sappi North America ("Sappi") (collectively "Defendants") have moved for summary judgment in their favor on all counts of Plaintiff Keith W. Mitchell, d/b/a Keith W. Mitchell and Sons Trucking's ("Mitchell") complaint. Mitchell filed his own motion for partial summary judgment on Count I, Count II, and Count IV of his complaint. The Defendants oppose Mitchell's motion for partial summary judgment; Mitchell opposes Defendants' motion for summary judgment as to all counts except Count IV. Pursuant to its discretionary authority, the Court chose to rule on the motions without hearing. M.R. Civ. P. 7(b)(7).

## FACTUAL BACKGROUND

Red Shield Acquisition, LLC, ("Red Shield") owned and operated a pulp mill in Old Town, Maine beginning in 2008. (Defendant's Statement of Material Facts ("Def's S.M.F.") at ¶ 1.)

1

Earlier in 2014, Red Shield was suffering from financial issues that caused woodchip suppliers to stop selling to Red Shield out of fear that they would not be paid. (Def's S.M.F. ¶ 3.) CNG, which already purchased and resold Red Shield's pulp, implemented a solution to this problem whereby CNG would purchase the woodchips from suppliers and then resell them to Red Shield. (Def's S.M.F. ¶¶ 2, 4-6.)

Notwithstanding CNG becoming the nominal purchaser of chips, Red Shield carried on not just in making pulp, but also in contracting with suppliers to obtain woodchips. (Def's S.M.F. ¶ 11.) Although Red Shield was still contracting with woodchip suppliers, as it had prior to CNG's new role as woodchip purchaser, these woodchips were now subject to a bailment agreement whereby CNG held title to the woodchips but Red Shield retained possession of the chips until they entered the pulp manufacturing process. (Def's S.M.F. ¶ 9, 11.) (*Id.* ¶¶ 6-8). CNG further protected itself by filing a Uniform Commercial Code financing statement with the Delaware Department of State covering the woodchips supplied by CNG to Red Shield. (Def's S.M.F. ¶ 10.) Although this arrangement kept Red Shield afloat for several months, Red Shield ceased operation sometime in August 2014. (Def's S.M.F. ¶ 20.)

On July 23, 2014, Mitchell transported a load of woodchips from Portage, Maine to Red Shield's mill in Old Town, Maine. (Plaintiff's Statement of Material Facts ("Pl's S.M.F.") at ¶¶ 4-5.) Mitchell was unaware of the bailment agreement between CNG and Red Shield. (Pl.'s S.M.F. ¶ 6.) It is not clear whether Mitchell was otherwise aware that CNG held title to the woodchips he delivered. (Pl's S.M.F. ¶ 5; Def's S.M.F. ¶ 6.)

After Red Shield ceased operations, CNG scrambled to find buyers for the woodchips. (Def's S.M.F. ¶ 21.) CNG settled on Sappi and arranged for the woodchips' delivery to Sappi's mill in Skowhegan, Maine. (*Id.*) For its part, Sappi understood that although the woodchips were

2

held at Red Shield's facility in Old Town, CNG owned the chips and could sell them to Sappi. (Def's S.M.F. ¶ 22.)

As he had not been paid for the July 23 woodchip load, Mitchell recorded a Hemlock Bark, Cordwood and Pulpwood Lien ("H.B.C.P. Lien") at the Penobscot County Registry of Deeds on August 19, 2014. (Pl's S.M.F. ¶ 7.) On August 28, 2014, Mitchell informed CNG and Sappi that he claimed a H.B.C.P. Lien on Red Shield's woodchips and real estate. (Pl's S.M.F. ¶¶ 23-24; Def's S.M.F. ¶¶ 8-9.) CNG contested the ongoing validity of that lien. (Pl's S.M.F. ¶ 25.) Mitchell proceeded to obtain a writ of attachment against Red Shield in Houlton District Court on September 12, 2014 in order to enforce the H.B.C.P. Lien. (Pl's S.M.F. ¶ 35.) Mitchell subsequently recorded the writ of attachment in the Penobscot County Registry of Deeds. (*Id.*)

## PROCEDURAL POSTURE

This case has a complicated procedural history. It has been assigned three unique docket numbers over the past three years as it wended its way through three Maine state courts and overlapped briefly with the litigation of Red Shield's bankruptcy in the U.S. Bankruptcy Court for the District of Maine.

The Defendants are the only remaining defendants in a case that, as originally filed in Houlton District Court on September 10, 2014, named Red Shield as defendant and listed Sappi and CNG as mere parties-in-interest. (Pl's S.M.F. ¶ 15; Def's S.M.F. ¶¶ 28-29.) On October 4, 2014, Mitchell filed another suit against Red Shield in Penobscot Superior Court. (Def's S.M.F. ¶ 31.) On May 25, 2017, Mitchell filed an amended complaint in Houlton District Court naming only CNG and Sappi as defendants. (Pl's S.M.F. ¶ 34.) The Penobscot Superior Court action has been consolidated with the Houlton District Court actions and the case has been transferred here to the Business and Consumer Court. (Pl's S.M.F. ¶ 35.)

3

While the 2014 cases were pending, Red Shield's involuntary Chapter 7 bankruptcy case commenced. (Pl's S.M.F. ¶ 26.) On October 10, 2014, one of Red Shield's creditors filed a petition in the U.S. Bankruptcy Court for the District of Maine, seeking Red Shield's involuntary bankruptcy pursuant to Chapter 7 of the U.S. Bankruptcy Code. (*Id.*) The upshot of those proceedings was that a company called Expera Old Town, LLC ("Expera") purchased substantially all of Red Shield's assets and assumed Mitchell's purported liens on Red Shield's former property on December 5, 2014. (Def's S.M.F. ¶ 32.) On December 30, 2014, Mitchell released the H.B.C.P. Lien and a mechanic's lien he claimed on Expera's property. (Def's S.M.F. ¶ 33.)

Mitchell brings several causes of action against CNG and Sappi, all with the goal of recovering payment for his delivery of the July 23 woodchip load. All of Mitchell's claims against CNG and Sappi are now before this Court on these dueling motions for summary judgment. (Pl's S.M.F. ¶ 35.)

## STANDARD OF REVIEW

Summary judgment is granted to a moving party when "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). A material fact is one capable of affecting the outcome of the litigation. *Savell v. Duddy*, 2016 ME 139, ¶ 19, 147 A.3d 1179. A genuine issue exists where the jury would be required to "choose between competing versions of the truth." *M.P. Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. "A party seeking to avoid summary judgment must adduce prima facie evidence as to each element of a claim or defense that the party asserts." *Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179.

## DISCUSSION

I.    COUNT I: SECURITY INTEREST

In Count I, Mitchell seeks declaratory relief and an award of damages pursuant to a

4

perfected security interest he claims in the woodchips he delivered to Red Shield in July 2014. Plaintiffs argue that Mitchell has failed to adduce *prima facie* evidence of the elements required for creating and perfecting a valid security interest.

In order to be enforceable, a security interest generally requires a security agreement authenticated by the debtor. 11 M.R.S.A. § 9-1203(2)(c). Defendants claim that Mitchell has not cited to record evidence of a security agreement authenticated by either defendant or a third-party.

Mitchell does not allege that Red Shield, CNG, or Sappi ever authenticated a security agreement in his favor. CNG denies that it ever authenticated such an agreement, (Def's S.M.F. ¶ 15), and as title owner of the woodchips, (Def's S.M.F. ¶ 7), it was likely the only party that could grant Mitchell a security interest of any value in the woodchips. *See* 11 M.R.S.A. § 9-1203(2)(b). Sappi likewise denies that it authenticated a security agreement naming the woodchips as collateral, before or after acquiring title to the chips. (Def's S.M.F. ¶ 16).

Mitchell argues that his security interest in the woodchips arises from his purported statutory liens, but this misstates the law. Except under a narrow set of circumstances inapplicable here, a security agreement is a necessary antecedent to an enforceable security interest. *See* 11 M.R.S.A. § 9-1203(2)(c)(i)-(iii). Mitchell's enforcement of his statutory liens state distinct causes of action and are discussed below. *See* Parts II, IV *infra*, of this Order.

Because Mitchell has failed to adduce *prima facie* evidence of a security agreement, CNG and Sappi are entitled to judgment as a matter of law on Count I. Therefore, Defendants' motion for summary judgment is hereby **granted** as to Count I. Plaintiff Mitchell's motion for summary judgment is **denied** as to Count I.

II.    COUNT II: H.B.C.P. LIEN

In Count II, Mitchell seeks declaratory relief and an award of damages pursuant to a

5

H.B.C.P. Lien "on the real estate, buildings, personal property and wood chips of the Defendants to secure payment for the woodchip hauling services" pursuant to 10 M.R.S.A. § 3606. That statute reads in relevant part: "Whoever labors at . . . hauling pulpwood . . . has a lien thereon[1] for the amount due for his personal labor and the services performed by his team, which takes precedence of all other claims, continues for 30 days after the contract is completed, and may be enforced by attachment." *Id.*

When construing a statute, the court's purpose is to give effect to the Legislature's intent. *City of Bangor v. Penobscot Cty.*, 2005 ME 35, ¶ 9, 868 A.2d 177. The court first looks to the plain meaning of the text of the statute, and looks beyond the text only when necessary to resolve ambiguous statutory language. *Id.*

The statute explains the procedure required to enforce a H.B.P.C. Lien. The lienholder has thirty days from the completion of her contract to enforce the lien. If this deadline is not met, the lien ceases to continue. The statute provides that the lien "may be enforced by attachment." 10 M.R.S.A. § 3606.

Mitchell delivered the load of woodchips to Red Shield on July 23, 2014. (Pl's S.M.F. at ¶¶ 4-5). This completed the contract and started the thirty-day enforcement period. Twenty-seven days later, on August 19, 2014, Mitchell recorded the H.B.C.P. Lien at the Penobscot County Registry of Deeds. (Pl's S.M.F. ¶ 7). Fifty-two days after the completion of the contract, on September 12, 2014, Mitchell obtained a writ of attachment from Houlton District Court. (Pl's S.M.F. ¶ 35).

Mitchell concedes that he obtained the writ of attachment outside of the thirty-day period

---

[1] Defendants point out that the scope of Mitchell's H.B.C.P. Lien could extend only to the woodchips he delivered and not any of the other property on which Mitchell claims a lien under the statute. *See Bisbee v. Grant*, 127 Me. 243, 243, 142 A. 775, 775 (1928). Because the Court rules that Mitchell's H.B.C.P. Lien has expired the scope of whatever lien may have previously been held is a moot issue.

6

provided for enforcement actions under the statute, which expired on August 22, 2014. Mitchell claims that his recording of the H.B.C.P. Lien at the Penobscot County Registry of Deeds on August 19, 2014 was sufficient to continue the lien beyond the thirty-day period. Mitchell argues that because the lien was recorded, Defendants were on notice that Mitchell was asserting a lien and therefore the lien continued indefinitely until he obtained a writ of attachment to enforce it.

Section 3606 of title 10 of the Maine Revised Statutes is unambiguous in its explanation of the procedure required to enforce a H.B.C.P. Lien: the lienholder has thirty days to enforce her lien by attachment. There is nothing in the text of the statute to suggest that recording a H.B.C.P. Lien continues the thirty-day deadline to enforce the lien. Based on the plain language of the statute, the Court cannot conclude that Mitchell preserved his H.B.C.P. Lien beyond the thirty-day enforcement period by recording the lien at the Penobscot County Registry of Deeds.

Mitchell next argues that if recording the lien did not continue the enforcement period, then recording the lien was a sufficient "enforcement" method under the statute even in the absence of attachment. Mitchell argues that the use of the word "may" in 10 M.R.S.A. § 3606, rather than "must" or "shall," suggests that attachment is only one possible method of enforcement available to a lienholder asserting a H.B.C.P. Lien. Mitchell asserts that recording the lien was an acceptable alternative to enforcement by attachment given the optional connotation of the word "may."

The Court does not agree with this construction, and finds no ambiguity in the use of the word "may" in 10 M.R.S.A. § 3606. "May" in this context is giving the lienholder the option to enforce her lien, or not. It is not giving her the option to enforce her lien in any manner she believes appropriate or sufficient. To assume that the statute explicitly authorizes a procedure for enforcement that is merely optional would render the language dictating that procedure surplusage. *See City of Bangor*, 2005 ME 35, ¶ 9, 868 A.2d 177 ("Nothing in a statute is treated as surplusage

7

if a reasonable construction supplying meaning and force is otherwise possible.") (quotations omitted).

There is no dispute that Mitchell did not obtain a writ of attachment to enforce his H.B.C.P. Lien until after the thirty-day period authorized by 10 M.R.S.A. § 3606 had closed. Because that is the only effective procedure for enforcing a H.B.C.P. Lien under the statute, Defendants are entitled to judgment as a matter of law on Count II. Defendants' motion for summary judgment is thus hereby **granted** as to Count II. Plaintiff Mitchell's motion for summary judgment is **denied** as to Count II.

III.   COUNT III: BREACH OF CONTRACT

Only Defendants have moved for summary judgment on this count; Mitchell opposes on the ground that a trial is necessary to resolve genuine factual issues material to whether the parties entered into a contract. Defendants argue that Mitchell has failed to adduce *prima facie* evidence of a contract between Mitchell and either defendant.

Mitchell alleges that he and the Defendants entered into either an express or implied agreement whereby Mitchell agreed to provide woodchip hauling services to the Defendants in exchange for payment. (Amended Complaint ¶ 35.) In their motion, Defendants argue that there is no record evidence of such an agreement between Mitchell and themselves, and that any contract Mitchell had for woodchip hauling was with Red Shield, and not with them. (Def's S.M.F. ¶¶ 13-14). All parties agree that Mitchell had a contract with Red Shield. (Pl's S.M.F. ¶ 4; Def's S.M.F. ¶ 11).

To survive a defendant's motion for summary judgment, the plaintiff must establish a *prima facie* case for each element of her claim. *Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179. To prevail in an action for breach of contract, the plaintiff must prove breach of a material contract

8

term, causation, and damages. *Me. Energy Recov'y Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶¶ 7-8, 724 A.2d 1248.

Mitchell has failed to adduce *prima facie* evidence of the first element of a breach of contract claim. Mitchell effectively concedes as much in his opposition to Defendants' motion. Rather than argue that there is a genuine factual issue as to whether Mitchell had an express agreement with either defendant, Mitchell claims that he had a "quasi-contract" or "contract by construction." Recovery under such a theory is inconsistent with the existence of an express contract. *Paffhausen v. Balano*, 1998 ME 47, ¶ 6, 708 A.2d 269.

Because Mitchell has failed to adduce *prima facie* evidence of an essential element of his claim, Defendants are entitled to judgment as a matter of law and their motion for summary judgment is thus hereby **granted** as to Count III.

IV.  COUNT IV: MECHANIC'S LIEN

Only Defendants move for summary judgment on Count IV. Mitchell does not oppose Defendants' motion as to this count, but instead purports to voluntarily dismiss Count IV as to Defendant's motion for summary judgment. The Court treats this as a plaintiff's motion for voluntary dismissal pursuant to M.R. Civ. P. 41(a)(1). Because Defendants have filed a motion for summary judgment, voluntary dismissal without prejudice as to any count can now only be affected by filing a stipulation of dismissal signed by all parties. *See* M.R. Civ. P. 41(a)(1)(i)-(ii). No such stipulation has been filed. Mitchell's motion for voluntary dismissal of Count IV must therefore be **denied.**

In Count IV, Mitchell alleges that he has a mechanic's lien on the real and personal property of the Defendants pursuant to 10 M.R.S.A. § 3251. There are no facts in the summary judgment record to suggest that Mitchell provided any of the services that create a mechanic's lien under the

9

statute. *See* 10 M.R.S.A. § 3251. Further, Mitchell cannot identify any structure to which he did any work on which a mechanic's lien could be levied. *See id.* Defendants are therefore entitled to judgment as a matter of law on Count IV and Defendants' motion for summary judgment is thus hereby **granted** as to Count IV.

## V. COUNT V: QUANTUM MERUIT

Only Defendants move for summary judgment as to Count V. Mitchell responds that a trial will be necessary to resolve the genuine factual issues bearing on whether he is entitled to recover from Defendants on a *quantum meruit* theory.

"[A] claim for relief pursuant to *quantum meruit* seeks recovery for services or materials provided under an implied contract." *Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221 (citing *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269). A claim for *quantum meruit* requires proof of the following three elements: "(1) services . . . rendered to the defendant by the plaintiff; (2) with the knowledge and consent of the defendant; and (3) under circumstances that make it reasonable for the plaintiff to expect payment." *Smith v. Cannell*, 1999 ME 19, ¶ 12, 723 A.2d 876.

Defendants argue that Mitchell has failed to make out a *prima facie* case for *quantum meruit* recovery because the required elements cannot be adduced from the summary judgment record. *See Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179. Defendants point out that the undisputed facts establish that: (1) Mitchell's services were rendered for the benefit of Red Shield, not either defendant, (Def's S.M.F. ¶¶ 13-14); (2) neither defendant had contact with Mitchell, (Def's S.M.F. ¶ 17-19); and (3) to the extent that Mitchell reasonably expects payment, he must look to Red Shield, and not either of these Defendants.

Mitchell's only retort is that extrinsic evidence and testimony at trial will ultimately vindicate his position. Mitchell cites *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269, for the rule that

10

*quantum meruit* entitles a plaintiff to recover under an implied contract. More is needed to survive a motion for summary judgment. *See Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179. Mitchell cannot merely recite the rule allowing recovery under *quantum meruit* and say that triable issues remain. Defendants have shown that Mitchell failed to adduce *prima facie* evidence of the elements required for recovery under a *quantum meruit* theory, and Mitchell has no adequate rebuttal. Defendants are therefore entitled to judgment as a matter of law on this count. Defendants' motion for summary judgment is **granted** as to Count V.

## VI. COUNT VI: UNJUST ENRICHMENT

Only Defendants move for summary judgment as to Count VI. Mitchell responds that a trial will be necessary to resolve the genuine factual issues bearing on whether he is entitled to recover from Defendants for unjust enrichment.

"Unjust enrichment, [unlike *quantum meruit*], provides damages based on principles of equity, not contract, and awards the successful party the value of benefits conferred on another when no contract exists." *Cummings v. Bean*, 2004 ME 93, ¶ 9, 853 A.2d 221. To recover under an unjust enrichment theory, a party must prove (1) that it conferred a benefit on the other party; (2) that the other party had "appreciation or knowledge of the benefit;" and (3) that the "acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Estate of Anderson*, 2010 ME 10, ¶ 10, 988 A.2d 977 (internal quotations omitted).

Mitchell cites to *Paffhausen*, 1998 ME 47, ¶ 6, 708 A.2d 269, for its definition of unjust enrichment, and then recites the elements required for recovery for unjust enrichment without citations to record evidence. This is insufficient to survive a defendant's motion for summary judgment. *Savell*, 2016 ME 139, ¶ 18, 147 A.3d 1179

11

Defendants argue that they are entitled to judgment as a matter of law on this claim because the Plaintiff has failed to adduce *prima facie* evidence of the elements that would entitle him to recovery for unjust enrichment. Using record citations, Defendants point out that Mitchell's services were for the benefit of Red Shield, and not either defendant. (Def's S.M.F. ¶¶ 13-14.) Defendants did not reap any benefit from Mitchell's hauling the chips to Old Town because CNG and Sappi had to arrange for the chips' delivery to Sappi in Skowhegan. (Def's S.M.F. ¶ 21.) Defendants also argue that it would be unjust to require Defendants to pay Mitchell: CNG suffered its own losses as a result of Red Shield's closure and subsequent bankruptcy, (Def's S.M.F. ¶¶ 2-6), and the sale of woodchips to Sappi was a backup plan. (Def's S.M.F. ¶¶ 8, 21.)

Mitchell has failed to adduce countervailing record evidence that demonstrates how Defendants were enriched, or why such enrichment is unjust.[2] Because Mitchell has failed to adduce *prima facie* evidence of the elements required to recover for unjust enrichment, Defendants are entitled to judgment as a matter of law on this Count. Defendants' motion for summary judgment is **granted** as to Count VI.

## VII. COUNT VII: MAINE UNFAIR TRADE PRACTICES ACT

Only Defendants move for summary judgment on Count VII, which brings a claim under the Maine Unfair Trade Practices Act ("UTPA"), 5 M.R.S.A. §§ 205-A through 214. Defendants argue that Mitchell cannot bring an action under the statute because it is limited to claims arising from "purchases or leases [of] goods, services or property, real or personal, *primarily for personal, family or household purposes.*" 5 M.R.S.A § 213 (emphasis added).

The Maine UPTA, unlike the federal statute on which it was based, 15 U.S.C.S. § 45, *see*

---

[2] Mitchell litigated his claims against Red Shield in bankruptcy court. Those claims passed on to its successor, Expera, (Def's S.M.F. ¶ 32); Mitchell then voluntarily dismissed those claims. (Def's S.M.F. ¶ 33.) If Mitchell experienced a loss, it was a direct result of the bankruptcy process and business decisions made by Mitchell in that process. It would be inequitable to require these defendants to cover the loss.

5 M.R.S.A. § 207, provides a private right of action for those injured by unfair trade practices: 5 M.R.S.A. § 213. *See Bartner v. Carter*, 405 A.2d 194, 200 (Me. 1979). However, more than a mere violation is required to recover in a private right of action under Maine's UPTA. In *Bartner*, the Law Court held that to recover in a private action brought pursuant to 5 M.R.S.A. § 213, a buyer is "required to show that [she] purchased the property for personal, family or household purposes" and that she suffered actual financial loss as a result of the seller's misrepresentations. *Id. See* 5 M.R.S.A. § 213.

Mitchell cites 5 M.R.S.A § 206 for the broad definition of "trade and commerce" under the statute, but that is not what is at issue. Even assuming that there has been a violation of the Maine UTPA, Mitchell cannot satisfy one of the elements for private recovery under that statute. Mitchell has not alleged that this transaction—delivering woodchips to Red Shield—was the purchase or lease of property for personal, family, or household purposes. 5 M.R.S.A § 213. *See Bartner*, 405 A.2d at 200. Even Mitchell's version of the story demonstrates that Mitchell's relationship with Red Shield was commercial, not personal, in nature. (Pl's S.M.F. ¶¶ 4-5.) There is no genuine factual dispute on this point. Because Mitchell is not entitled to private recovery under the Maine UTPA as a matter of law, Defendants are entitled to summary judgment on Count VII. Defendants' motion for summary judgment is **granted** as to Count VII.

VIII.   COUNT VIII: UNIFORM DECEPTIVE TRADE PRACTICES ACT

Only Defendants move for summary judgment on Count VIII, which brings a claim under the Maine Uniform Deceptive Trade Practices Act ("UDTPA"), 10 M.R.S.A. §§ 1211-1216.

Mitchell alleges that Defendants have violated the UDTPA under several of its definitions of deceptive trade practices, *viz.*: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (2) causing likelihood of

13

confusion or misunderstanding as to affiliation, connection or association with, or certification by, another; and (3) engaging in other conduct that similarly creates a likelihood of confusion or misunderstanding. *See* 10 M.R.S.A. § 1212(1)(B)-(C),(L).

Defendants claim that Mitchell had no direct or indirect contact with either defendant. (Def's S.M.F. ¶¶ 17-18.) Mitchell claims that there was contact, but the contact he points to consists of correspondence between Mitchell's attorney and representatives of CNG and Sappi *after* Mitchell delivered his final woodchip load to Red Shield. (Plaintiff's Exhibits 2-4,9,13, to Mitchell's motion for partial summary judgment.) This correspondence staked out the parties' respective positions on a brewing dispute. It would be absurd or illogical to construe such correspondence as a "trade practice" within the scope of Maine's UDTPA. *See Ford Motor Co. v. Darling's*, 2016 ME 171, ¶ 24, 151 A.3d 507.

Mitchell cannot explain how the Defendants could have caused a likelihood of confusion on Mitchell's part in the absence of any contact between Mitchell and either defendant prior to the time that their dispute arose. Mitchell therefore has failed to adduce *prima facie* evidence of a violation of Maine's UDTPA.[3] Thus, Defendants are entitled to judgment as a matter of law on Count VIII. Defendants' motion for summary judgment is **granted** as to Count VIII.

## IX.   COUNT IX: DECLARATORY RELIEF

Mitchell's claim for declaratory relief pursuant to M.R. Civ. P. 57 and 14 M.R.S.A. § 5953 is premised on the existence of a contract between the parties. (Amended Complaint ¶ 64.) The Court has awarded summary judgment to Defendants on all counts seeking relief for breach of contract or seeking to recover under an implied contract. *See* Parts III, V of this Order, *supra*.

---

[3] Although not raised by Defendants, there is a question whether Mitchell is entitled to the relief sought in this Count. Mitchell seeks an award of damages in Count VIII, but only injunctive relief is available for violations of the Maine UDTPA. 10 M.R.S.A. § 1213.

14

Defendants are therefore entitled to judgment as a matter of law on Count IX and their motion for summary judgment is thus **granted** as to Count IX.

## CONCLUSION

Based on the foregoing IT IS ORDERED:

Plaintiff Mitchell's motion for partial summary judgment is **DENIED.**

Defendant CNG's and defendant Sappi's motion for summary judgment is **GRANTED.** Summary judgment shall be entered for defendant CNG and defendant Sappi on all counts of plaintiff Mitchell's complaint.

The Clerk is instructed to enter this Order on the docket for this case incorporating it by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __11/28/17__

Michaela Murphy, Justice
**Business and Consumer Court**

Entered on the Docket: __11/28/17__
Copies sent via Mail___Electronically✓

15