2004 ME 63

**Donald A. THOMPSON et al.**

**v.**

**SHAW'S SUPERMARKETS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2004.

Decided: May 10, 2004.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

RUDMAN, J.

[¶1] Donald A. Thompson and Frederick L. Lockwood appeal from a summary judgment entered in the Superior Court (York County, *Fritzsche, J.*) in favor of Shaw's Supermarkets, Inc. and Clifford W. Perham, Inc., on their complaint seeking unpaid overtime wages.[1] Thompson and Lockwood contend that the trial court erred in concluding that (1) the relevant statute, 26 M.R.S.A. § 664 (Supp.2003), does not apply to work done outside Maine; and (2) that "commingled" workweeks are exempt from the overtime provision of section 644(3). We affirm the judgment of the trial court on an alternate ground argued by Shaw's and interpret the overtime provision as inapplicable to interstate drivers.[2]

## I. BACKGROUND

[¶2] Thompson and Lockwood formerly were employed as truck drivers by Clifford W. Perham, Inc., a Maine corporation, which is a wholly owned subsidiary of Shaw's Supermarkets, Inc. Shaw's operates supermarkets in several New England states, and Perham is engaged exclusively in the delivery to Shaw's Supermarkets of items that are sold in those supermarkets on a daily basis. Trucks operated by Perham's drivers are housed and maintained at a terminal in

Donald F. Fontaine, Esq. (orally), Jeffrey A. Thaler, Esq., Bernstein Shur Sawyer & Nelson, Portland, for plaintiffs.

Philip J. Moss, Esq. (orally), Moon, Moss, McGill & Shapiro, P.A., Portland, for defendant.

---

* Although not available at oral argument, Justice Dana participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

1. Thompson and Lockwood also appeal from the trial court's order denying his motion for class action certification. Because we affirm the judgment of the trial court in favor of Shaw's, we need not reach the issue of class certification.

2. Because we interpret the overtime provision as inapplicable to interstate drivers, we do not reach the extraterritorial application or the commingled workweek issues.

Wells. The products they transport are loaded onto trailers hauled by those trucks at warehouses owned and operated by Shaw's in Wells and in Massachusetts.

[¶ 3] The trailers hauled by the drivers are loaded with frozen foods, or agricultural produce, or dry groceries—but never a combination of the products. The drivers take the loaded trailers on "runs" to deliver the product to several stores and to return the empty trailer to the warehouse or terminal. Sometimes the driver brings back "returns" consisting of food products and/or nonfood products and sometimes the driver will stop at a vendor and "back haul" food or nonfood products to one of the warehouses. The driver's trip report shows which loads originated at which warehouse, how much time was spent delivering each load, and how long it took to drive the truck back to the terminal after the delivery has been made.

[¶ 4] Prior to August 1999, Perham's drivers were paid for the time they spent driving by the mile. After August 1999, drivers who drove more than two hundred eighty miles per day continued to be paid by the mile, while drivers who drove less than two hundred eighty miles per day were paid an hourly rate and were paid overtime at time and a half if they worked more than eight hours a day. Both prior to and after August 1999, drivers were paid by the hour for time spent loading or unloading the trucks, or waiting time, and for emergency maintenance. Drivers who worked moving trucks and trailers around the yard and performing other yard related duties were paid by the hour for that work and were paid overtime at time and a half at a regular hourly rate if they spent more than forty hours a week performing these duties.

[¶ 5] When they worked for Perham, the qualifications and hours of service of Thompson and Lockwood were subject to regulations by the Secretary of Transportation. For thirty-five years, the Maine Department of Labor interpreted Maine's overtime law as inapplicable to interstate drivers. In March 2002, the Legislature ratified the Department of Labor's interpretation of the overtime law when it enacted Public Law 628, "An Act to Amend the Maine Overtime Pay Provision Regarding Certain Drivers and Drivers' Helpers." [3]

---

**3.** Title 26 M.R.S.A. § 664 now provides, in relevant part:

> Except as otherwise provided in this subchapter, an employer may not employ any employee at a rate less than the rates required by this section.
>
> . . . .
>
> 3. Overtime rate. An employer may not require an employee to work more than 40 hours in any one week unless 1½ times the regular hourly rate is paid for all hours actually worked in excess of 40 hours in that week. The regular hourly rate includes all earnings, bonuses, commissions and other compensation that is paid or due based on actual work performed and does not include any sums excluded from the definition of "regular rate" under the Fair Labor Standards Act, 29 United States Code, Section 207(e).

> The overtime provision of this section does not apply to:
>
> . . . .
>
> G. A driver or driver's helper who is subject to the provisions of 49 United States Code, Section 31502 as amended or to regulations adopted pursuant to that section. This paragraph is repealed August 31, 2003;
>
> H. Effective September 1, 2003, a driver or driver's helper who is subject to the provisions of 49 United States Code, Section 31502 as amended or to regulations adopted pursuant to that section if the driver or driver's helper is paid overtime pay reasonably equivalent to that required by this section for all hours worked in excess of 40 per week. The Department of Labor may adopt rules governing the determination of payment methods that satisfy the "reasonably equivalent" standard set forth in this paragraph. Rules adopted pursuant

[¶ 6] The statutory language at issue in this case is as follows:

> 3. Overtime rate. An employer may not require an employee to work more than 40 hours in any one week unless 1½ times the regular hourly rate is paid for all hours actually worked in excess of 40 hours that week. . . .
>
> The overtime provision of this section does not apply to:
>
> . . . .
>
> F. The canning, processing, preserving, freezing, drying, marketing, storing, packing for shipment or distribution of:
>
> (1) Agricultural produce;
>
> (2) Meat and fish products; and
>
> (3) Perishable foods.

26 M.R.S.A. § 664(3)(F) (Supp.2003).

## II. THE ISSUE

[¶ 7] The issue at the heart of this appeal is the interpretation of section 664(3)(F).

When construing a statute, we seek to give effect to the legislative intent by examining the plain meaning of the statutory language. If the plain meaning of the text does not resolve an interpretive issue raised, we then consider the statute's history, underlying policy, and other extrinsic factors to ascertain legislative intent.

*In re Wage Payment Litigation,* 2000 ME 162, ¶ 4, 759 A.2d 217, 220–21 (citations omitted). The critical interpretive issue raised on this appeal, namely whether interstate motor carriers are exempt from the overtime provision, cannot be resolved by examining the plain meaning of the statutory language. Thus, we move on to extrinsic factors in order to determine legislative intent. *See id.; see also Larrabee v. Frozen Foods, Inc.,* 486 A.2d 97, 101 (Me.1984) ("[N]othing in the plain language or legislative history . . . indicates that our Legislature intended a private party to have a right of action under these statutes.").

It is a well accepted principle of statutory construction that when an administrative body has carried out a reasonable and practical interpretation of a statute and this has been called to the attention of the Legislature, the Legislature's failure to act to change the interpretation is evidence that the Legislature has acquiesced in the interpretation.

*In re Spring Valley Dev.,* 300 A.2d 736, 743 (Me.1973). The Maine Department of Labor is the agency charged by our Legislature with responsibility for enforcement of "all laws regulating payment of wages" in Maine. 26 M.R.S.A. § 42 (Supp.2003). The Department's interpretation of the overtime provision, section 664 of the wage and hour law, dates back to April 1966,

---

to this subsection are major substantive rules as defined in Title 5, chapter 375, subchapter II–A.

    I. A driver or driver's helper who is subject to the provisions of 49 United States Code, Section 31502 as amended or to regulations adopted pursuant to that section and who is represented for purposes of collective bargaining by a labor organization certified by the National Labor Relations Board that is a party to a collective bargaining agreement that intends to regulate the rate of pay to be paid the driver or driver's helper; and

    J. A driver or driver's helper who is subject to the provisions of 49 United States Code, Section 31502 as amended or to regulations adopted pursuant to that section and who is employed by an entity that is party to a contract with the Federal Government or an agency of the Federal Government that dictates the minimum hourly rate of pay to be paid the driver or driver's helper.

Title 26 M.R.S.A. § 664 (Supp.2003).

shortly after the provision was enacted. Since that time, the Department's position has been that section 664 did not require overtime to interstate motor carriers who were covered by the federal motor vehicle exemption. Despite the fact that between 1966 and 2001, our Legislature amended section 664 thirty-one times, with twelve of those amendments dealing specifically with the overtime provision, not once in that thirty-five-year-period did the Legislature amend the statute to change the interpretation that the Department had given it. The record in this case, which includes written correspondence between state representatives and both the Commissioner and the Director of the Department of Labor, demonstrates that the Department's position had been called to the attention of the Legislature during that time. Moreover, when, on March 26, 2002, the Legislature passed L.D. 2108, entitled "An Act to Amend the Maine Overtime Pay Provisions Regarding Certain Drivers and Drivers' Helpers," the Legislature, rather than rejecting the Department's interpretation of the overtime law, ratified it:

> The Legislature finds that the practice in the State for at least 30 years has been that interstate truck drivers and other employees involved in interstate trucking have been considered exempt from the Maine overtime law. This practice was developed in reliance on a 1966 written interpretation by the Department of the Attorney General and an interpretation of the Department of Labor that federal overtime law superseded Maine law. These interpretations led the Department of Labor to routinely defer enforcement of overtime laws to the Federal Government. *As a result of this longstanding practice, a majority of employers and employees have adjusted their expectations and developed compensation practices that take into account the Department of Labor's in-terpretation that there is no statutory requirement for overtime pay.*

> As a result of cases pending before Maine courts in early 2002, the Legislature was asked to enact this interpretation of law. The Legislature now intends to enact the interpretation, retroactive to January 1, 1995. However, in deference to the authority of the judiciary to redress disputes, the Legislature exempts cases pending in Maine courts as of March 20, 2002 from the application of section 3 of this Act.

P.L.2001, ch. 628 § 4, "Legislative intent; findings" (emphasis added).

[¶ 8] The drivers in this case were employed as interstate motor carriers. The Department, for over thirty-five years, has exempted interstate motor carriers from the overtime provision. During that time, the Legislature acquiesced in the Department's interpretation of the overtime provision and eventually enacted that interpretation in 2002. In reliance on the Department's interpretation and the Legislature's acquiescence to that interpretation, the industry developed a compensation scheme.

[¶ 9] Given the Legislature's intent, as manifested in its acquiescence in the Department's interpretation, we have no reason to interpret the overtime provision, formerly set forth in section 664(3)(F), any differently than the provision was interpreted by the Maine Department of Labor as inapplicable to motor vehicle drivers subject to regulations by the United States Secretary of Transportation.

The entry is:

Judgment affirmed.