2005 ME 114

**BOSTON & MAINE CORPORATION**
**et al.**

v.

**STATE TAX ASSESSOR.**

Supreme Judicial Court of Maine.

Argued: June 15, 2005.

Decided: Nov. 3, 2005.

Glen Porter (orally), Eaton, Peabody, Bangor, for the plaintiffs.

G. Steven Rowe, Attorney General (orally), Michael Miller, Asst. Atty. Gen., Augusta, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

CLIFFORD, J.

[¶ 1] Both the defendant, the State Tax Assessor, and the plaintiff Railroads, Boston & Maine Corporation and Portland Terminal Company, appeal from a summary judgment entered in the Superior Court (Kennebec County, *Marden, J.*) in favor of the Assessor on the Railroads' petition for review of the Assessor's decision denying certain expenditures as eligible for inclusion in calculating the Railroads' Maine Capital Tax Credit pursuant to M.R. Civ. P. 80C. Although we do so on alternate grounds, we affirm the judgment of the Superior Court.

## I.  BACKGROUND

[¶ 2] The parties do not dispute the material facts. Boston & Maine Corporation and the Portland Terminal Company (the Railroads) own and operate rail lines in Maine. In 1998, the Railroads reached an agreement with the State pursuant to which improvements to their railroad tracks would be funded by the Northern New England Passenger Rail Authority (NNEPRA), a governmental body authorized to expend public funds with the goal of promoting passenger rail service in Maine. *See* 23 M.R.S.A. § 8111 (Supp. 2004).

[¶ 3] The track improvements were accomplished and paid for between 1999 and 2001. Costs for the improvements paid for by the Railroads were reimbursed by NNEPRA, and outside contractors completing the improvements were paid by NNEPRA directly. The parties agree that no portion of the nearly $30 million that it cost to fund the track improvements in Maine ultimately came from any of the Railroads' own funds, and that all of the improvements were funded, either directly or indirectly, by NNEPRA.

[¶ 4] In April of 2002, the Railroads filed their State railroad tax returns for the 2001 taxable year claiming the expenditures for track improvements from 1999 to 2001 as capital expenditures to be included in the computation of their Capital Tax Credit pursuant to 36 M.R.S.A. § 2621–A(3)(B) (1990 & Supp. 2004).[1] The Director of the Sales, Fuel, and Special Tax Division notified the Railroads by letter in June of 2002 that because NNEPRA, rather than the Railroads themselves, had actually funded the track improvements, such costs could not be included as expenditures made by the Railroads for purposes of calculating the credit. The Railroads requested reconsideration of the Director's decision pursuant to 36 M.R.S.A. § 151 (Supp. 2004),[2] and, following such reconsideration, the Director of the Maine Revenue Services Appellate Division again denied the Railroads' requested credit because

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

1.  Boston & Maine later filed an amended return for the 2002 year reducing its claimed expenditures from over $43 million, which it had inadvertently claimed on its original return, to approximately $23 million by eliminating amounts spent for work completed on its tracks within the State of New Hampshire. Portland Terminal Company's improvements totaled over $6 million, and were all within the State of Maine. Thus, NNEPRA funded close to $30 million in track improvements for the Railroads in Maine.

2.  Section 151 provides for reconsideration of a decision of the State Tax Assessor, and also for an appeal to the Superior Court for "a de novo hearing and ... a de novo determination of the merits of the case." 36 M.R.S.A. § 151 (Supp.2004).

of the source of the funds used to make the improvements.

[¶ 5] In February of 2003, pursuant to M.R. Civ. P. 80C, the Railroads sought review of the Assessor's decision in the Superior Court. Following discovery, the Assessor moved for a summary judgment, contending that the applicable statutes do not allow the Railroads to seek a credit for expenditures made by some other entity, in this case, NNEPRA. The Railroads filed a cross-motion for a summary judgment asserting that the language of the statute does allow them to include those expenditures in calculating their credit as a matter of law.

[¶ 6] The court entered a summary judgment in favor of the Assessor and denied the Railroads' motion for a summary judgment. Contrary to the contention of the Assessor, the court concluded that the Railroads, in calculating their Capital Tax Credit, are entitled to include amounts received from NNEPRA as expenditures because the State benefits from the increase in value to the Railroads as a result of the improvements. The Superior Court further concluded, however, that the Railroads could include the NNEPRA funds as expenditures in calculating their Capital Tax Credit *only if* the Railroads also included those amounts as corresponding income in their "Gross Transportation Receipts" (GTR) for the year in which the funds were received. In this case, because the Railroads used the accrual method of accounting, the income received by NNEPRA was not included in their GTR calculation until the 2002 taxable year. The court therefore determined that because the Railroads had not included the NNE-

PRA funds in their GTR for the taxable years in which the funds were received—including the 2001 taxable year at issue—they were not entitled to claim those amounts as expenditures in their Capital Tax Credit calculation for those years. This appeal by the Assessor and the cross-appeal by the Railroads followed.

## II.  DISCUSSION

[¶ 7] Both parties contend that the court erred in its entry of the summary judgment. The Assessor argues that the court incorrectly concluded that NNEPRA funds are eligible for inclusion as expenditures in calculating a railroad's Capital Tax Credit.[3] The Railroads contend that the court was correct in determining that the statute allowed the expenditures for track improvements to be included in the Capital Tax Credit calculation. The Railroads argue, however, that the court wrongly concluded that they were not entitled to claim the NNEPRA expenditures in computing the credit solely because they did not include those amounts received from NNEPRA in 2001 in their GTR for that year.

[¶ 8] In reviewing the entry of a summary judgment, we examine the record to determine "whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to a judgment as a matter of law." *Champagne v. Mid–Me. Med. Ctr.*, 1998 ME 87, ¶ 5, 711 A.2d 842, 844; M.R. Civ. P. 56. In doing so, we accept as true all uncontroverted facts in the record. *Id.* In this case, the parties agree as to all the pertinent underlying facts. They disagree as to the interpretation of the statutory provisions surround-

---

3. As an initial matter, we determine that, although the Assessor appeals from a summary judgment in its favor, it nevertheless has standing to pursue the appeal because sufficient collateral consequences adverse to the

interest of the Assessor flow from that judgment. *See Sevigny v. Home Builders Ass'n of Me., Inc.*, 429 A.2d 197, 201 (Me.1981); *see also Great Cove Boat Club v. Bureau of Pub. Lands*, 672 A.2d 91, 92 n. 1 (Me.1996).

ing the Maine Capital Tax Credit. We review such issues of statutory interpretation de novo. *Commerce Bank & Trust Co. v. Dworman*, 2004 ME 142, ¶ 7, 861 A.2d 662, 665.

[¶ 9] Since 1881, the Maine Legislature has required that all railroads pay to the State "an annual excise tax for the privilege of exercising its franchises and the franchises of its leased roads in the State, which ... is in place of all taxes upon the property of such railroad." 36 M.R.S.A. § 2623 (1990); *see also Me. Cent. R.R. Co. v. Halperin*, 379 A.2d 980, 983 (Me.1977). Title 36 M.R.S.A. § 2624 sets out how the tax is calculated, that is, by comparing "[t]he amount of the gross transportation receipts for the year ended on the 31st day of December preceding the levying of the tax ... with the net railway operating income for that year." 36 M.R.S.A. § 2624 (1990). The tax imposed depends on the extent to which net railway operating income exceeds a certain percentage of GTR. 36 M.R.S.A. § 2624. For example, "[w]hen the net railway operating income does not exceed 10% of the gross transportation receipts, the tax shall be an amount equal to 3 ¼% of the gross transportation receipts." 36 M.R.S.A. § 2624.

[¶ 10] The Maine Capital Tax Credit is "a credit against the tax imposed by section 2624." 36 M.R.S.A. § 2621–A(3) (Supp.2004). "The credit shall be an amount equal to 45% of the expenditures for a taxable year related to capital investments, improvements or renovations to a railroad's operations in this State." 36 M.R.S.A. § 2621–A(3)(B). It is the construction of this language that is in dispute in this case.

[¶ 11] The Passenger Rail Service Act, 23 M.R.S.A. §§ 8001–8120 (Supp.2004), was enacted by the Legislature in 1995. The Act created NNEPRA to carry out the provisions of the Act in "promoting passenger rail service." 23 M.R.S.A. § 8111. The Act therefore vests NNEPRA with the power to:

> take all actions that are reasonably necessary to initiate, establish or reinitiate regularly scheduled passenger rail service between points within this State and points within and outside this State. These actions may include, but are not limited to, the acquisition, holding, use, operation, repair, construction, reconstruction, rehabilitation, modernization, rebuilding, relocation, maintenance and disposition of railroad lines, railway facilities, rolling stock, machinery and equipment, trackage rights, real and personal property of any kind and any rights in or related to that property.

23 M.R.S.A. § 8003(1). To carry out its mission, NNEPRA may conduct studies, enter into contracts, acquire property, and reach agreements with governmental agencies. 23 M.R.S.A. § 8004. NNEPRA is therefore directed, as a public governmental body, to "seek and use funds necessary for the implementation of [the Passenger Rail Service Act], in an amount not less than $40,000,000, exclusive of any interest or other debt service or expenses paid for funds borrowed through bond issues or otherwise." 23 M.R.S.A. § 8005(1). Pursuant to these directives, NNEPRA funded, either directly or indirectly by reimbursing the Railroads, improvements to the railroad tracks in Maine completed by the Railroads from 1999 to 2001 at a total cost of close to $30 million. NNEPRA also funded railroad improvements in New Hampshire.

[¶ 12] The Assessor contends that the court misconstrued the statute in concluding that the Capital Tax Credit is available for all expenditures for capital investments pursuant to section 2621–A(3)(B), regardless of the source of the funds, and that the Railroads can claim the credit for im-

provements even though the cost of those improvements was ultimately borne by NNEPRA. We therefore have to determine whether the "expenditures" to which section 2621–A(3)(B) refers in directing the manner of calculating the credit include only those amounts actually spent by the Railroad itself, as the Assessor argues, or whether such expenditures can include amounts paid from any source, public or otherwise, as the Railroads argue.

[¶ 13] "Our main objective in statutory interpretation is to give effect to the Legislature's intent." *Blanchard v. Dep't of Transp.*, 2002 ME 96, ¶ 16, 798 A.2d 1119, 1124. In order to discern such Legislative intent, we look first to the plain meaning and language of the statute. *Darling's v. Ford Motor Co.*, 2003 ME 21, ¶ 7, 825 A.2d 344, 346. If the plain language of a statute is ambiguous, we next look to any indicia of legislative intent in enacting the statute. *Id.* In considering the scope and applicability of a tax credit, "the person seeking the credit must show that it is unmistakably within the spirit and intent of the statute." *DaimlerChrysler Servs. N. Am., LLC v. State Tax Assessor*, 2003 ME 27, ¶ 7, 817 A.2d 862, 864 (quotation marks omitted).

[¶ 14] The Assessor contends that the purpose of the statute makes clear that only expenditures made by the Railroad itself were intended to be considered in calculating the credit. Specifically, the Assessor argues, because the taxpayer railroad is the only entity that pays railroad taxes, only those expenditures made by the taxpayer railroad are relevant in calculating the amount of the credit. The Railroads argue, in contrast, that the language in section 2621–A(3)(B) does not expressly limit the expenditures that may be claimed to those that are funded by any particular source; it requires only that *some expenditure* be made for the purposes of a capi-

tal investment in the State of Maine. Thus, the Railroads contend, the only inquiry required to be made by section 2621–A(3)(B) is into the *type* of expenditures made to improve the railroad, and not the *source* of the funds needed to pay for the improvements.

[¶ 15] The statute does not define the term "expenditure," nor does the legislative history accompanying the tax credit statute directly address its meaning. In view of the purpose of the statute, however, and the context of the legislative scheme surrounding section 2621–A(3)(B), the only expenditures to which section 2621–A(3)(B) could be referring are those expenditures incurred by the taxpayer railroad itself. Section 2621–A(3)(B) and its companion sections all deal with the tax filing requirements to which only the taxpayer railroads are subject. *See Blanchard*, 2002 ME 96, ¶ 21, 798 A.2d at 1125 (discussing the importance of the statutory scheme in determining legislative intent). To conclude, as the Railroads urge, that taxpayer railroads are entitled to receive a substantial tax credit based on money spent by some other entity would lead to an absurd and illogical result, allowing railroads to receive a double benefit, i.e., the benefit of the improvements to the infrastructure paid for by a government agency, and, in addition, a tax credit based on expenditures from government funds that resulted in those improvements. *See Estate of Robert A. Chartier*, 2005 ME 17, ¶ 6, 866 A.2d 125, 127 (quotation marks omitted) (stating that we must "constru[e] the statutory language to avoid absurd, illogical, or inconsistent results").

[¶ 16] Moreover, the very purpose of the credit is to encourage railroads to spend their own money to improve their rail lines. That *purpose* is *not* accomplished by allowing a railroad to take advantage of the credit when it has not spent any of its

own funds to improve its rail lines. Such a result was not the intent of the Legislature. Accordingly, we affirm on alternate grounds the decision of the Superior Court denying the Railroads' requested Capital Tax Credit. *See, e.g., Thompson v. Shaw's Supermarkets, Inc.,* 2004 ME 63, ¶ 1, 847 A.2d 406, 407 (affirming on alternate grounds a decision of the Superior Court).

[¶ 17] In their cross-appeal, the Railroads contend that the court erred in concluding that in order to claim a Capital Tax Credit for the NNEPRA funds used to pay for improvements to the infrastructure of the Railroads, the funds had to be included in the Railroads' GTR *in the year in which the funds were received and expended.* Because we agree with the Assessor that the NNEPRA-funded improvements are not eligible for inclusion in the Railroads' Capital Tax Credit calculation at all, we need not address this contention.

The entry is:

Judgment affirmed.