MAINE SUPREME JUDICIAL COURT Reporter of Decisions
Decision: 2024 ME 8
Docket: Cum-22-319
Argued: June 7, 2023
Decided: January 25, 2024

Panel: STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, and LAWRENCE, JJ.

ROBERT BOCKO

v.

UNIVERSITY OF MAINE SYSTEM

STANFILL, C.J.

[¶1]  Robert Bocko appeals from a Superior Court (Cumberland County, *O'Neil, J.*) summary judgment in favor of the University of Maine System (UMS) on all counts of his complaint and denying Bocko's motion for partial summary judgment.  Bocko argues that UMS failed to timely pay him wages as required by 26 M.R.S. § 621-A (2021)[1] and is thus liable for penalties in accordance with

---

[1]  Section 621-A provides in relevant part:

> At regular intervals not to exceed 16 days, every employer must pay in full all wages earned by each employee.  Each payment must include all wages earned to within 8 days of the payment date.  Payments that fall on a day when the business is regularly closed must be paid no later than the following business day.  An employee who is absent from work at a time fixed for payment must be paid as if the employee was not absent.

26 M.R.S. § 621-A(1) (2021).  Section 621-A(1) has since been amended.  P.L. 2023, ch. 124 § 1 (effective Oct. 25, 2023) (codified at 26 M.R.S. § 621-A(1) (2023)).  26 M.R.S. § 626-A (2021) provides that "[w]hoever violates any of the provisions of section[] 621-A . . . is subject to a forfeiture of not less than $100 nor more than $500 for each violation."  In addition, the employee may recover unpaid wages or benefits as well as "a reasonable rate of interest, costs of suit including a reasonable

26 M.R.S. § 626-A (2021). UMS counters that Bocko is exempt under section 623 from the requirements of section 621-A.[2] *See* 26 M.R.S. § 623 (2022) ("This section and sections 621-A and 622 do not apply to family members and salaried employees as defined in section 663, subsection 3, paragraphs J and K."). We conclude that Bocko is exempt from section 621-A as an employee compensated on a fee basis as described in 26 M.R.S. § 663(3)(K) (2023) and 12-170 C.M.R. ch. 16, § III (effective June 29, 2005). Therefore, we affirm the Superior Court's judgment.

## I. BACKGROUND

[¶2] The following facts are taken from the summary judgment record, which this Court views in the light most favorable to Bocko. *See Chase Home Fin., LLC v. Higgins*, 2009 ME 136, ¶ 10, 985 A.2d 508.

[¶3] UMS employed Bocko to teach a one-credit banking law course at the University of Maine School of Law in the fall semester of 2019. UMS and Bocko memorialized the agreement with a contract specifying that Bocko would receive one payment at a "monthly rate" of $1,000 for the month of

---

attorney's fee, and an additional amount equal to twice the amount of unpaid wages as liquidated damages." 26 M.R.S. § 626-A (2021). Section 626-A has since been amended. P.L. 2021, ch. 404 § 2 (effective Oct. 18, 2021) (codified at 26 M.R.S. § 626-A (2023)).

[2] Title 26 M.R.S § 623 (2022) has since been amended. P.L. 2023, ch. 124 § 4 (effective Oct. 25, 2023) (codified at 26 M.R.S. § 623 (2023)).

October 2019.  The contract further provided that the classes would take place on Tuesdays and Thursdays from 1:10 to 2:50 p.m., commencing on October 1, 2019, and ending on October 24, 2019.  Bocko prepared to teach the course in July, August, and September 2019; prepared for the October 1 class in September 2019; taught the October 1 class; prepared for and taught seven more classes during October 2019; prepared course assignments in October 2019; and graded the assignments between November 25 and December 4, 2019.  In total, Bocko taught eight classes, consisting of thirteen and one-third classroom hours, for the Banking Law course and spent an additional eighty hours outside of class working on course-related matters.

[¶4]  In early October 2019, prior to receiving his payment, Bocko asked UMS why he had not received any pay.  A UMS administrator told him that adjunct faculty were always paid once a month at the end of each month.  UMS paid Bocko $1,000 in a single lump sum on October 31, 2019.

[¶5]  In the fall semester of 2020, UMS employed Bocko to teach a three-credit admiralty law course as an adjunct professor at Maine Law.  UMS and Bocko memorialized the arrangement in a second contract.  This contract specified that Bocko would receive three payments at a "monthly rate" of $1,333.33 for the period from October 1, 2020, through December 31, 2020.

The contract specified that the classroom portions of the course would take place on Tuesdays and Thursdays from 10:40 a.m. to 12:10 p.m., starting September 1, 2020, and ending December 4, 2020. Bocko worked to prepare the course in June, July, and August 2020; prepared for the September 1 class in August 2020; taught the September 1 class; prepared and taught twenty-five more classes in September, October, November, and December 2020; prepared a comprehensive final examination in late November and early December 2020; and reviewed and graded the final examination between December 15 and 17, 2020. In total, Bocko taught twenty-six classes, consisting of thirty-nine classroom hours, for the admiralty law course and spent an additional two hundred and sixty hours outside of class working on course-related matters.

[¶6]  Before he received his first payment at the end of October 2020, Bocko asked UMS whether it was required to pay him in conformity with 26 M.R.S. § 621-A(1) ("At regular intervals not to exceed 16 days, every employer must pay in full all wages earned by each employee."). On October 28, 2020, UMS's Director of Human Resource Operations and Supervisor of the Payroll Team stated in an email to Bocko:

> After internal discussions and careful review of our current payroll practices, it was confirmed that you are not being paid in

accordance with Maine law that stipulates certain employees must be paid at a minimum interval of every 16 days. To comply, we will be moving you to our biweekly payroll schedule effective immediately. This essentially means you will be paid next on 11/20 for pay period 11/01/20 to 11/14/20. You will receive pay for the month of October on Friday, 10/30.

On November 2, 2020, the employment contract for Bocko was revised, stating that his total pay of $4,000 would be paid in equal installments of $444.45 on the biweekly pay cycle from September 1, 2020, to December 31, 2020. UMS paid Bocko $4,000.05 for the admiralty law course as follows: $1,333.33 on October 30, 2020; $888.92 on November 6, 2020; and $444.45 on November 20, December 4, December 18, and December 31, 2020.

[¶7]  In May 2021, Bocko filed a complaint against UMS for breach of contract and remedies under 26 M.R.S. § 626-A for untimely payment of wages pursuant to section 621-A. UMS timely answered, and Bocko moved for partial summary judgment as to UMS's liability under section 626-A. UMS filed a cross motion for summary judgment on all counts of Bocko's complaint.

[¶8]  On September 12, 2022, the trial court denied Bocko's motion and granted UMS's motion, entering judgment in favor of UMS. The court concluded that (1) Bocko was exempt from section 621-A's requirements for the timely payment of wages because he met the definition of a teacher under 12-170 C.M.R. ch. 16, § VI(B); (2) alternatively, Bocko was exempt from the

requirements of section 621-A because he met the definition of a salaried employee under 26 M.R.S. § 663(3)(K) and 12-170 C.M.R. ch. 16; and (3) because section 621-A did not apply to Bocko, UMS was not liable to him for any remedies under section 626-A. The court declined to address UMS's additional argument that Bocko was exempt from section 621-A because he met the definition under section 663(3)(K) of an employee receiving compensation on a fee basis pursuant to 12-170 C.M.R. ch. 16, § III.

[¶9] Bocko timely appealed the court's adverse decision on his statutory wage claim under section 626-A.[3] The Maine Employment Lawyers Association filed an amicus brief in this case, which we have considered.

## II. DISCUSSION

[¶10] In an appeal from a ruling on cross-motions for summary judgment, we review de novo the trial court's decision for errors of law. *Scott v. Fall Line Condo. Ass'n*, 2019 ME 50, ¶ 5, 206 A.3d 307. There are no disputes regarding the terms of Bocko's contracts with UMS. The contracts call for Bocko to be paid in fixed amounts based on the number of credit hours assigned to the courses he taught and not based on actual hours worked.

---

[3] Bocko does not appeal the trial court's decision regarding his claim for breach of contract. The trial court said that because section 621-A's pay-interval requirement does not apply to Bocko, he cannot establish a claim for breach of contract based on UMS paying him in a lump sum rather than on the section 621-A interval.

## A.    26 M.R.S. § 621-A

[¶11]  When "interpreting a statute, our single goal is to give effect to the Legislature's intent in enacting the statute.  To achieve that goal, we first look to a statute's plain language, taking into account the subject matter and purposes of the statute, and the consequences of a particular interpretation." *Dorsey v. N. Light Health*, 2022 ME 62, ¶ 11, 288 A.3d 386 (citations and quotation marks omitted).  "In doing so, we consider the entire statutory scheme so that a harmonious result can be achieved."  *Kane v. Comm'r of the Dep't of Health and Hum. Servs.*, 2008 ME 185, ¶ 12, 960 A.2d 1196.

[¶12]  As a general matter, we construe Maine's wage payment laws "liberally for the benefit of employees."  *Dorsey*, 2022 ME 62, ¶ 11, 288 A.3d 386. If the plain language of a statute is ambiguous, "we defer to the interpretation of a statutory scheme by the agency charged with its implementation as long as the agency's construction is reasonable."  *Conservation L. Found., Inc. v. Dep't of Env't Prot.*, 2003 ME 62, ¶ 23, 823 A.2d 551; *see also Corinth Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 36, 246 A.3d 586 (upholding the Bureau of Insurance's interpretation of an ambiguous statute within its expertise). "Statutory language is considered ambiguous if it is reasonably susceptible to

different interpretations." *Manirakiza v. Dep't of Health and Hum. Servs.*, 2018 ME 10, ¶ 8, 177 A.3d 1264 (quotation marks omitted).

[¶13]  Section 621-A(1) requires employers to pay employees earned wages at regular intervals not to exceed sixteen days.  Title 26 M.R.S. § 623 provides, however, that section 621-A does not apply to "salaried employees" as defined by 26 M.R.S. § 663(3)(K), which states the following:

> 3.     "Employee" [is] any individual employed or permitted to work by an employer but the following individuals shall be exempt from this subchapter:
> . . . .
>> (K)  A salaried employee who works in a bona fide executive, administrative or professional capacity and whose regular compensation, when converted to an annual rate, exceeds 3000 times the State's minimum hourly wage or the annualized rate established by the United States Department of Labor under the federal Fair Labor Standards Act, whichever is higher . . . .[4]

Section 663(3)(K) does not further define a "salaried employee who works in a

---

[4] Like Maine law, federal law includes a salary basis exemption from its minimum wage and overtime requirements.  Under 29 U.S.C.A. § 213(a)(1) (Westlaw through Pub. L. No. 118-30), certain minimum wage and overtime requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity."  The federal regulations further provide that "to qualify as an exempt executive, administrative or professional employee under [section 213(a)(1)], an employee must be compensated on a salary basis at a rate of not less than $684 per week."  29 C.F.R. § 541.600(a) (2022).  Before the regulations were revised, effective January 1, 2020, that amount was $455 per week.  29 C.F.R. § 541.600(a) (2019); *Nevada v. United States Dep't of Labor*, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016) (enjoining the department from implementing section 541.600(a) (2019) and leaving in place the 2004 $455 per week standard).  When annualized, the rate was $23,660 ($455 multiplied by fifty-two weeks) in 2019 and $35,568 in 2020 ($684 multiplied by fifty-two weeks).  These amounts are lower than Maine's minimum wage in 2019 and 2020 multiplied by 3,000.  *See* 26 M.R.S. § 664(1) (2023) (Maine's minimum wage was $11.00 per hour in 2019 and $12.00 per hour in 2020).  Thus, Maine's threshold of 3,000 times the minimum hourly wage, or

9

bona fide executive, administrative or professional capacity."

[¶14] Although UMS does not pay Bocko an hourly wage, the contours of the "salaried employee" definition are not entirely clear. Specifically, it is unclear whether "salaried employee" encompasses the kind of payment arrangement specified in Bocko's contracts with UMS. Contrary to Bocko's assertions, we determine the statute is ambiguous because it is susceptible to multiple interpretations. *See Competitive Energy Servs. LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039. Thus, we examine the interpretation of the statute by the agency charged with its implementation and defer to the agency's interpretation so long as the agency's interpretation is reasonable and valid. *See Conservation L. Found., Inc.*, 2003 ME 62, ¶¶ 21-42, 823 A.2d 551.

**B.    12-170 C.M.R. ch. 16, § III**

[¶15] "The Maine Department of Labor is the agency charged by our Legislature with responsibility for enforcement of all laws regulating payment of wages in Maine." *Thompson v. Shaw's Supermarkets, Inc.*, 2004 ME 63, ¶ 7, 847 A.2d 406 (quotation marks omitted); 26 M.R.S. § 42 (2023). Accordingly, the Department "may adopt, in accordance with the Maine Administrative Procedure Act, rules regarding all such laws, except where [the] authority is

---

$33,000 in 2019 and $36,000 in 2020, exceeds the United States Department of Labor's threshold.

granted to a board or commission." 26 M.R.S. § 42; *see also* 5 M.R.S. § 8051 (2023) (outlining rule-making under the Administrative Procedure Act). The Department's rules provide specific guidance on the "executive, administrative and professional minimum wage and overtime exemptions allowed for individuals who are paid on a salary basis pursuant to [section 663(3)(K)]." 12-170 C.M.R. ch. 16 (purpose statement) (quotation marks omitted).

[¶16] Under 12-170 C.M.R. ch. 16, § III, an employee meets the section 663(3)(K) exemption if the employee is "compensated on a fee basis."[5] Fee basis arrangements "are characterized by the payment of an agreed sum for a single job regardless of the time required for its completion." *Id.* The "payments resemble piecework payments with the important distinction that generally speaking a fee payment is made for the kind of job which is unique rather than for a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again." *Id.* Payments that are "based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." *Id.*

[¶17] Under the regulation, the fee paid to the employee must also meet

---

[5] We address only section III and do not reach any other sections of the rule. *See* 12-170 C.M.R. ch. 16, § III (effective June 29, 2005).

the annualized salary requirement in section 663(3)(K) to satisfy the elements of the exemption. *See id.* § III(A). To determine whether a fee payment is adequate, the amount the employee is paid is tested by referencing a standard forty-hour workweek. *Id.* Thus, a fee meets the salary requirement if, when converted to a yearly salary based on an hourly wage and a forty-hour work week, it exceeds 3,000 times Maine's minimum hourly wage, or $33,000 in 2019 and $36,000 in 2020. *See id.*; 26 M.R.S. § 663(3)(K); 26 M.R.S. § 664(1) (2023).

[¶18] We conclude that UMS paid Bocko on a fee basis and that the amount paid under his contracts with UMS meets the applicable salary requirement when converted to an annual rate. *See* 26 M.R.S. § 663(3)(K); 12-170 C.M.R. ch. 16, § III. Thus, Bocko is exempt from section 621-A. *See* 26 M.R.S. §§ 623, 663(3)(K); 12-170 C.M.R. ch. 16, § III.

[¶19] As noted above, Bocko's contracts with UMS provided that he would receive one payment of $1,000 in exchange for teaching the banking law course and $4,000, payable in three payments of $1,333.33, in exchange for teaching the admiralty law course.[6] Both employment arrangements constituted compensation on a fee basis because UMS paid Bocko "an agreed sum for a single job regardless of the time required for its completion." 12-170

---

[6] The fact that UMS characterized these payments as a "salary" is irrelevant to our analysis.

C.M.R. ch. 16, § III.

[¶20]  The summary judgment record shows that Bocko's compensation was for "the accomplishment of a given single task," teaching a course.  *Id.* Unlike a salary, which "as ordinarily conceived, reasonably connotes an actual, affirmative regular payment of benefits (usually in monetary form) in exchange for work or services," Bocko's fee-basis payments were for singular jobs— teaching the banking law and admiralty law courses—and were not expected to repeat indefinitely.  *City of Biddeford v. Biddeford Tchrs. Ass'n*, 304 A.2d 387, 417 (Me. 1973) (Wernick, J., concurring); *see* 12-170 C.M.R. ch. 16, § III ("[G]enerally speaking a fee payment is made for the kind of job which is unique rather than for a series of jobs which are repeated an indefinite number of times and for which payment on an identical basis is made over and over again.").

[¶21]   We turn to whether Bocko's fee-basis payments meet the salary-basis requirement when converted to an hourly and annual rate.  The only tangible time requirements Bocko's contract references are the classroom hours.  The banking law course totaled thirteen and one-third classroom hours, and the admiralty law course totaled thirty-nine classroom hours.  Based on those classroom hours, Bocko earned $75 per hour for teaching the banking law course ($1,000 divided by thirteen and one-third) and roughly $102 per hour

for teaching the admiralty law course ($4,000 divided by 39), far exceeding Maine's minimum wage and the salary-basis requirement in section 663(3)(K).

[¶22]  Bocko argues that his compensation is based on not only the classroom hours but also the hours he must spend outside the classroom on tasks such as preparation, reading, and grading.  If those hours are counted and converted to an hourly rate and then annualized, his compensation would be less than the salary-basis requirement in violation of the statute.  We disagree with Bocko's argument for three reasons.

[¶23]  First, the number of classroom hours is the only specific time requirement in the contract.  The contract does not require Bocko to spend any particular amount of time working outside the classroom.  Second, if compensation included the hours spent outside the classroom, it could be calculated only in hindsight.  In that case, there would be no consistency or predictability for UMS or the adjunct professors: the amount of preparation time is unknown when the contract is set and will vary depending on the course, the adjunct professor's substantive knowledge, and whether the adjunct professor is teaching a course for the first time or for the tenth time.  It will also change week to week; therefore, including the preparation hours could mean that some weeks fall under the salary-basis calculation and others fall

over.  Finally, although we recognize that a competent adjunct professor will spend some time outside the classroom in preparation, there is no requirement that any adjunct professor do so.  Including the preparation hours would mean that the parties have no ability to determine prospectively whether the proposed compensation is legally adequate, making the rule and statute impossible to administer.

[¶24]  In sum, we use the classroom hours to convert the fee that Bocko was paid to an hourly wage.  As a result, we conclude that Bocko is exempt from section 621-A because he was paid on a fee basis in an amount that meets the applicable salary-basis requirement.

## C.    Validity of 12-170 C.M.R. ch. 16, § III

[¶25]  In light of this conclusion, we must also address Bocko's contention that 12-170 C.M.R. ch. 16, § III is invalid because it contradicts the plain language of the statutory scheme.  *See Lydon v. Sprinkler Servs.*, 2004 ME 16, ¶ 15, 841 A.2d 793 (invalidating a rule promulgated by the Worker's Compensation Board because it was inconsistent with the relevant statute).

[¶26]  Title 5 M.R.S. § 8058 (2023) permits judicial review of an agency rule in any civil or criminal proceeding.  We adhere to the three-part analysis outlined in section 8058(1) to assess a rule's validity.  *See Conservation L.*

*Found., Inc.*, 2003 ME 62, ¶ 21, 823 A.2d 551; *Cumberland Farms N., Inc. v. Maine Milk Comm'n*, 428 A.2d 869, 874 (Me. 1981). First, if we find "that a rule exceeds the rule-making authority of the agency" or is void for the agency's failure to follow the procedural processes of the Maine Administrative Procedure Act, *see* 5 M.R.S. § 8057(1), (2) (2023), we must "declare the rule invalid," 5 M.R.S. § 8058(1). Second, we review any other alleged procedural errors, and we "may invalidate the rule only if [we] find[] the error to be substantial and related to matters of such central relevance to the rule that there is a substantial likelihood that the rule would have been significantly changed if the error had not occurred." *Id.* Finally, if a procedural error does not invalidate the rule, we review the rule substantively "to determine whether the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." *Id.*

[¶27] As previously noted, the Maine Department of Labor is charged with enforcing and adopting rules regarding Maine's wage-payment laws. *See Thompson*, 2004 ME 63, ¶ 7, 847 A.2d 406; 26 M.R.S. § 42. Bocko raises no challenge to the procedure used to adopt the rules. Instead, he argues that the Department exceeded the scope of its authority in enacting 12-170 C.M.R. ch. 16, § III because the rule contradicts the relevant statutory scheme. This

argument is a substantive challenge to the rule. *See Conservation L. Found., Inc.*, 2003 ME 62, ¶ 25, 823 A.2d 551. Bocko has the burden to demonstrate that 12-170 C.M.R. ch. 16, § III is not in accordance with the law. *See id.* ¶¶ 38-39; 5 M.R.S. § 8058.

[¶28] Bocko argues that 12-170 C.M.R. ch. 16, § III contradicts the statutory scheme because sections 621-A and 663(3)(K) do not contemplate the payment of wages on a fee basis and only consider wages paid on a salary basis. He also argues that section 623 prohibits payment on a fee basis. We disagree.

[¶29] To begin, the fact that the statute does not use the term "fee basis" does not show that the rule contradicts the law. The Department's rule otherwise encapsulates the requirements of section 663(3)(K) and requires the employee to meet the section 663(3)(K) salary-basis requirement. 12-170 C.M.R. ch. 16, § III.

[¶30] The rule also aligns with federal law and regulations. *Compare id.*, *with* 29 U.S.C.A. § 213(a)(1) (Westlaw through Pub. L. No. 118-30), and 29 C.F.R. § 541.605 (2022). This alignment is relevant because "[w]hen, as here, a term is not defined in either the relevant statutory provisions or in prior decisions of this court," we "may look to analogous federal statutes, regulations, and case

law for guidance." *Gordon v. Maine Cent. R.R.*, 657 A.2d 785, 786 (Me. 1995) (using federal law and regulations to interpret section 663(3)(K) before the Department enacted its rules under 12-170 C.M.R. ch. 16); *see Dir. of Bureau of Lab. Standards v. Cormier*, 527 A.2d 1297, 1300 (Me. 1987) ("While in no way bound by these cases, federal law does provide some useful guidance in formulating a coherent state law concept of 'employer' for purposes of enforcing [Maine's minimum wage law].").

[¶31]  Bocko also argues that fee-basis compensation is prohibited by section 623, which provides that "a corporation, contractor, person or partnership may not by a special contract with an employee or by any other means exempt itself from this section and sections 621-A and 622." 26 M.R.S. § 623.  We disagree.  This language does not prohibit compensation on a fee basis, just as it does not prohibit compensation on an ongoing salary basis.[7]

---

[7]  It is worth noting that "[i]t is a well-accepted principle of statutory construction that when an administrative body has carried out a reasonable and practical interpretation of a statute and this has been called to the attention of the Legislature, the Legislature's failure to act to change the interpretation is evidence that the Legislature has acquiesced in the interpretation." *Thompson v. Shaw's Supermarkets, Inc.*, 2004 ME 63, ¶ 7, 847 A.2d 406 (quotation marks omitted).  The Legislature has amended section 663 several times since 12-170 C.M.R. ch. 16, § III became effective in 2005, and the Legislature has yet to amend section 663(3)(K) to alter the interpretation that the Department has given it.  *See* 26 M.R.S. § 663 (2023).  Although not conclusive without evidence that the Legislature is aware of the Department's rule, this indicates that the Legislature has acquiesced to the Department's interpretation of section 663(3)(K). *See Thompson*, 2004 ME 63, ¶ 7, 847 A.2d 406.

[¶32]   Bocko raises no other argument to suggest that the rule is "arbitrary, capricious, [or] an abuse of discretion," and we conclude that it is not.  We therefore may defer to the Department's interpretation.  *See Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 27, 969 A.2d 897 ("[Appellee] has not asserted that the rule is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law.  Accordingly, we defer to and will apply the standard adopted by the [administrative agency].").

[¶33]   In sum, because the Department did not exceed its rule-making authority and 12-170 C.M.R. ch. 16, § III is a reasonable construction of a statute by the agency that administers it, we will defer to the rule in interpreting section 663(3)(K).  *See Conservation L. Found., Inc.*, 2003 ME 62, ¶¶ 21-42, 823 A.2d 551.

[¶34]   Notwithstanding that the trial court ruled in UMS's favor on different grounds—by concluding that Bocko was an exempt employee under 12-170 C.M.R. ch. 16, § VI(B) and 26 M.R.S. § 663(3)(K)—we affirm the court's judgment under our alternative reasoning.  *See Sears, Roebuck & Co. v. State Tax Assessor,* 2012 ME 110, ¶ 13, 52 A.3d 941 (affirming a court's summary judgment order on alternative grounds).  Because we determine that Bocko is an exempt employee because he is compensated on a fee basis, UMS is not in

violation of section 621-A, and we need not address the other issues raised by the parties.

The entry is:

Judgment affirmed.

---

Matthew S. Wahrer, Esq. (orally), Thompson Bowie & Hatch LLC, Portland, and Robert J. Bocko, pro se, for appellant Robert J. Bocko

David Strock, Esq. (orally), and Valerie A. Wright, Esq., Littler Mendelson, P.C., Portland, for appellee University of Maine System

Andrew Schmidt, Esq., and Pamela Lee, Esq., Borealis Law PLLC, Portland, for amicus curiae Maine Employment Lawyers Association

Cumberland County Superior Court docket number CV-2021-184
FOR CLERK REFERENCE ONLY